# Wytheville.

### BROWN v. COMMONWEALTH.

#### JUNE 21, 1900.

#### Absent, Riely, J.*

1. TAXATION—*Merchant's License—Country Produce—Place of Business—Doing Business—City Ordinance—Roanoke City.*—A merchant who has paid his license tax to the State for doing business at one point in the State is not required to take out an additional license for selling country produce acquired in his business at the market-house of a city in another portion of the State. The place occupied by him at the curb of the city market-house is not a place of business within the meaning of the statute. The statute contemplates a fixed place of business as a shop or store. Neither is such a sale "doing business in said city" within the meaning of the charter of the city of Roanoke, permitting the city to impose a license tax therefor.

2. TAXATION—*Doubtful Powers—How Resolved.*—Laws imposing a license or tax are strictly construed, and all doubts as to the meaning or scope of such laws are resolved against the government, and in favor of the citizen.

Error to a judgment of the Corporation Court of the city of Roanoke, rendered February 16, 1900, in two causes heard together by consent, one in the name of the *Commonwealth of Virginia* v. *W. C. Brown,* and the other in the name of the *City of Roanoke* v. *Same.*

*Reversed.*

Separate warrants were sued out in this matter, one in the

---

*Judge Riely was prevented by sickness from attending this term.

name of the State, for a violation of the State law, and the
other in the name of the city of Roanoke, for a violation of a
city ordinance. The trials and judgments were separate, but the
two appeals were heard together by consent.

*Hansbrough & Hall*, for the plaintiff in error.

*Attorney-General A. J. Montague*, for the Commonwealth.

*C. B. Moomaw*, for the city of Roanoke.

CARDWELL, J., delivered the opinion of the court.

W. C. Brown is a merchant in the county of Franklin, and
has the license required by law for the privilege of doing busi-
ness as a merchant in that county. In the course of his business,
he acquires by barter country produce, such as eggs, butter,
fowls and vegetables, which he often gathers up by sending his
wagon around among his customers, and from time to time he
brings the country produce, raised on his farm and acquired
through his store, to the city of Roanoke for sale. Such produce
is sold by him from his wagon on the city market, in accordance
with the market regulations of the city, which regulations im-
pose what is known as a curbage tax for the privilege of selling
each load of produce on the market square, and confines the sale
of such produce to the market square. On October 4, 1899,
Brown came to the city of Roanoke with a wagon-load of coun-
try produce, some of which was raised on his own farm, and the
residue was acquired by him in the course of his business. He
paid the curbage tax required by the market laws of the city,
and, on the market square, sold his load of produce to a merchant
doing business in the city. After having sold his produce, he
was cited to appear before the police justice for the city to show
cause why he should not be fined for doing business as a mer-
chant in the city, without having first obtained a license from the

city and from the State of Virginia to conduct such business. Upon the hearing of these warrants, the police justice dismissed them, holding that Brown was not conducting business in the city in such a manner as to make it necessary for him to obtain a merchant's license in the city. From this judgment, the Commonwealth and the city of Roanoke appealed to the Hustings Court of the city, and, upon the hearing of the causes on appeal, the Hustings Court imposed a fine of $30 on Brown for the violation of the State license law, and $2.50 for doing business as a merchant in the city without a license from the city.

By agreement, one bill of exceptions was taken to the rulings of the Hustings Court made applicable to both cases, and they are before us upon a writ of error awarded by one of the judges of this court.

We will first consider the question whether or not plaintiff in error, under the facts and circumstances stated, was required by the revenue laws of the Commonwealth to take out a merchant's license for the privilege of selling his country produce upon the market square of the city of Roanoke.

Section 549 of the Code requires that a merchant's license shall designate some definite place for the transaction of such business within the district of the commissioner granting the license.

The statute, imposing a license tax upon merchants, provides that the tax shall be graduated according to the amount of their purchases during the period for which the license is granted, and the section which fixes the amount of the tax declares that merchant tailors, lumber merchants, furniture merchants, butchers, green grocers, hucksters, dealers in coal, ice, or wood, shall be embraced in that section; but, it further provides that nothing contained in the section shall be so construed as to require a license of any person who may canvass any county or corporation to buy lambs, pigs, calves, fowls, eggs, butter, and such small matters of subsistence designed as food for man, unless

such person shall keep a place of business for the purpose of selling such articles in or within half a mile of a city or town in the State. (Sections 27 and 28, chap. 244, Acts 1889-'90.) Sections 32 and 33 of that act also expressly provide that a pedler's license shall not be required of any one for the privilege of selling or offering for sale family supplies of a perishable nature, farm products, wood or coal. And, by an act approved March 3, 1896, (Acts 1895-'96, p. 685,) it is declared unlawful for any city or town, or for any agent or officer of such city or town, to impose or collect any tax, fine or other penalty from any person selling their farm and domestic products within the limits of any such city or town outside of and not within the regular market-houses and sheds of such cities and towns.

It is, therefore, clearly the policy of the law to exempt persons who deal in country produce, as plaintiff in error does, from the payment of a license tax either as a merchant or as a pedler, or any tax for buying or selling, outside of the market of a city or town, such produce. He does not come under the exception, in the statute above referred to, by keeping a place of business for the sale of country produce in or within a half mile of the city of Roanoke, but such sales as were made by him in the city of Roanoke were made from his wagon on the market square.

A merchant's license contemplates that the merchant is to have a fixed place of business within a county or city—a store or shop for the sale of goods. This is the common acceptation of the term as given in 2 Bouvier's L. Dic., p. 155. The same author defines the word "merchant," in its legal acceptation, to mean one whose business it is to buy and sell merchandise, and says that it applies to all persons who habitually trade in merchandise. Neither in the legal nor common acceptation of the word "merchant" was plaintiff in error conducting a mercantile business in the city of Roanoke when selling country produce from his wagon on the market square of the city, and therefore is not liable to a fine for doing business as a merchant in the

city without having first obtained a license from the Common-wealth to conduct such a business.

It is claimed that section 104 of the charter of the city of Roanoke, Acts 1897-'98, page 549, furnishes authority to the city to impose a merchant's license tax upon plaintiff in error. This section, after specifying various kinds of business or em-ployment upon which the city may levy a license tax, provides that a license may be required of any person whatsoever *doing business in said city*, whether the business or employment be of a like character or kind as that specially mentioned or not, and whether a license is required therefor by the State or not. Can it be said that plaintiff in error was doing business in the city of Roanoke within the meaning of the section? We think not. It is clear that selling country produce on the market of the city is not specially mentioned in the section, and the authority to impose a license tax for the privilege of conduct-ing such a business must be derived, if at all, from the powers conferred in general terms.

Laws imposing a license or a tax are strictly construed, and whenever there is doubt as to the meaning or scope of such laws they are construed more strongly against the government and in favor of the citizen. *Supervisors* v. *Tallent*, 96 Va. 723.

Section 70 of the general ordinances of the city of Roanoke, like the statute of the State, imposes upon the merchant doing business in the city a tax graduated according to the purchases he makes in the conduct of his business, the tax imposed being the same as that prescribed in the statute, and concludes: " Dealers in dry goods, lumber, furniture, groceries, merchant tailors, or persons engaged in any other mercantile business whatsoever, and whether they be of like kind or class with those enumerated or not, except where otherwise herein specified, shall be embraced in this section."

Section 472 of the city's ordinances, pursuant to the authority expressly conferred in the city's charter, specifically imposes a

curbage tax upon the sale of country produce at the city market, making no distinction between persons selling such produce of their own raising, and persons who acquired such produce in other ways; and by section 474, the sale of such produce is confined to the city market.

Here, then, the city has confined the sale of country produce to the market square, specifically imposing a curbage tax for the privilege of selling it there; and, in the case at bar, after this curbage tax had been paid by plaintiff in error, demand is made upon him for the payment of a license tax as a merchant in the city, on the ground, as counsel for the city contends, that when plaintiff in error came to the city and paid his curbage tax, he acquired a place to do business in the city as a merchant, as fully and as completely as any merchant in the city doing business in any of the houses in the city, etc.   This position is wholly untenable.   When occupying a space in the market, after paying the curbage tax, plaintiff in error was not there to buy and sell, as is the business of a merchant, but merely to sell from his wagon his load of country produce, raised in part on his farm, and the residue bartered for or purchased in the course of his business in Franklin county, as he had the right to do, and when this was done, or the market hours closed, he abandoned the space in the market occupied by him, and had no further right to occupy it.   In no sense, therefore, was he doing business as a merchant in the city of Roanoke.

We are of opinion that the charter of the city does not authorize the imposition of a merchant's license tax in such a case, and that the Common Council of the city has not, by the ordinance relied on, attempted to impose the tax.

The judgment of the Hustings Court complained of will be reversed and annulled, and this court will enter such judgment as that court should have entered, dismissing the warrants against plaintiff in error, with costs to him as against the city of Roanoke.

*Reversed.*