# Wytheville.

## HICKS v. CITY OF BRISTOL.

### JUNE 16, 1904.

1. CONSTITUTIONAL LAW—*Local Assessments—Powers of Municipal Corporations—Restrictions.*—The power of municipal corporations to impose local assessments for paving streets is expressly prohibited by section 170 of the Constitution (1902), and the charters of all such corporations are amended by section 117 of the Constitution, "so as to conform to all the provisions, restrictions, limitations and powers set forth in this article, or otherwise provided in this Constitution." These provisions of the Constitution put an end to the right of municipal corporations to proceed to enforce such assessments. Nor, in the case at bar, are the rights of appellee saved by sections 3 or 4 of the schedule to the Constitution. Not by section 3, because it could not have been intended to continue a right which was expressly taken away by the Constitution, nor by section 4, for, if the words "all taxes," as therein used, be broad enough to cover local assessments, such assessments had not then been made, and could not be without further exercise of a power which the Constitution had taken away.

Error to a judgment of the Circuit Court of the city of Bristol, in a proceeding to collect a local assessment for paving the *roadway* of a street in the city of Bristol, in which defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Bullitt & Kelly, Geo. E. Penn* and *J. S. Ashworth,* for the plaintiff in error.

*S. V. Fulkerson, Peters & Lavinder* and *J. C. Byars,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The question involved in this case is the validity of a local assessment made upon abutting lands for paving a portion of one of the streets of the city of Bristol.

The legality of the assessment is attacked upon two grounds: First: That the assessment is in violation of Article 170 of the Constitution. Second: That if the assessment be not unconstitutional, the irregularities in the proceedings making it are fatal to its validity.

By section 72 of its charter (Acts of Assembly 1899-1900, pp. 627, 640, &c.), the city of Bristol was given the power, among other things, to pave its streets, and to determine what portion, if any, of the whole expense should be paid from the treasury of the city, and what portion thereof should be assessed upon the real estate, which, in the opinion of the City Council, would be benefited by such improvements. It was further provided that if the Council should determine at any time to make such improvements, it might order them to be made, and after the work had been completed the judge of the Corporation Court of the city should appoint a board of assessors to go upon the premises and levy a local assessment upon each piece of the abutting lands, or lots, to meet the expenses of the improvements in front of or along such real estate as would be in proportion and according to the benefits accruing to the same by reason of the improvement for the payment of which the assessment was made. The pavement in question was completed some months prior to July 10, 1902, the time when the present Constitution of the State went into effect, paid for by the city, and assessors appointed by the Corporation Court to assess the benefits, if any, accruing to the abutting property owners by

reason of the paving. The assessors were directed to perform their duties in accordance with a prior order of the court entered January 23, 1901. That order provided that before levying or making the assessment required the assessors should give notice to each of such abutting owners of the time and place they would meet, and that after due service of the notice required they should go upon the premises and levy a local assessment separately against each of the abutting lots of land, which would be in proportion to the benefits accruing to each lot by reason of the paving, and where no benefits had accrued no assessment was to be made.

On the 15th of July, 1902, the assessors gave notice, or attempted to do so (the sufficiency of the notice is denied by the plaintiffs in error) that they would meet on the 31st of that month at a certain hour and place, and proceed to levy the local assessment which they were required to make. This they did, and reported their action to the Corporation Court, and filed their report in the clerk's office of that court on the 3d day of November, 1902.

By the provisions of the same section (72) of the charter, any person or corporation who felt aggrieved by the report had the right to file exceptions to it. The court, after the report had been filed ten days, could act upon it. If no exceptions were filed to the report, the court was required to confirm it, and order the assessment to be paid by the abutting owners of the lots, as their interests in the same should appear, to the treasurer of the city, within such time and on such terms as the City Council might direct. If exceptions were filed to the report, the court was required to hear and determine such exceptions, and upon any question involved to hear evidence, with the right to increase or decrease the assessments if it appeared that they were not levied in proportion to the benefits to the abutting lots, and to make any correction therein which might seem equitable and just, or to recommit the report for cause.

That section further provided that such assessments, when the report of the assessors was confirmed, should be a lien on the abutting lands or lots.

Exceptions were filed to the report. On the 19th of February, 1903, the court overruled the exceptions of the plaintiffs in error, and confirmed the report as to them, declared the sum assessed against each lot to be a lien thereon, ordered the owners of the lots to pay the same, with interest thereon from November 3, 1902, in ten annual instalments, the first being payable November 4, 1903.

By section 170 of the Constitution, which went into effect July 10, 1902, it is provided that "No city or town shall impose any tax or assessment upon abutting landowners for street or other public local improvements, except for making and improving the walkways upon existing streets, and improving and paving the existing alleys, and for their construction, or for the use of sewers; and the same, when imposed, shall not be in excess of the peculiar benefits resulting therefrom to such abutting landowners."

The power to impose local assessments for paving streets was expressly prohibited by section 170 of the Constitution, and by section 117 of that instrument it is provided that each of the cities and towns of the State having at the time of the adoption of the Constitution a municipal charter, may retain the same, except in so far as it shall be repealed, or amended by the General Assembly; "provided that every such charter is hereby amended so as to conform to all the provisions, restrictions, limitations and powers set forth in this article, or otherwise provided in this Constitution."

The effect of the provisions contained in sections 170 and 117 of the Constitution was to repeal the charter of the city of Bristol so far as it authorized a local assessment for street paving.

"The repeal of a tax law," says *Cooley on Taxation* (2d Ed.),

p. 21, "puts an end to all right to proceed to a levy of taxes under it, even in cases already commenced, unless the right is reserved in the repealing statute, and statutory remedies for the enforcement of a tax are gone when the statute is repealed without a saving."

The same result must follow where the authority of municipal corporations to impose a local assessment for a particular purpose has been repealed.

It is insisted that sections 3 and 4 of the schedule to the Constitution saved to the city the power to make the assessments in question.

The portion of section 3 relied on is as follows: "Except as modified by this Constitution, all suits, actions, and causes of action, prosecutions, rights of individuals, of bodies corporate or politic, and of the State, shall continue."

The only saving in the provision quoted which could by possibility, as it seems to us, have any application to the taxing power of the city is that which declares that the "rights of . . . bodies corporate or politic . . . shall continue." Whatever may be the scope of that provision, it is clear, we think, that it was not intended to continue a right which was expressly taken away by the Constitution.

The saving relied on in section 4 of the schedule is as follows: "All taxes, fines, penalties, forfeitures, and escheats, accrued or accruing to the Commonwealth, or to any political subdivision thereof, under the present Constitution, or under the laws now in force, shall, under this Constitution, enure to the use of the Commonwealth, or of such subdivision thereof."

Conceding that the term "all taxes," as used in that section, is broad enough to include local assessments, the local assessments in question had neither accrued, nor were they accruing, when the Constitution went into effect. At that time they had not been assessed, and could not be without further exercise of a power which the city no longer had since the provision in its

charter which conferred the power had been repealed by the Constitution.  Having reached the conclusion that the local assessments in question were invalid because in violation of the Constitution, it is unnecessary to consider the questions raised as to the regularity of the proceedings by which the assessments were made.

We are of opinion, therefore, to reverse the judgment of the Circuit Court, and will enter such judgment as the Circuit Court ought to have entered, dismissing the proceedings against the plaintiffs in error.

*Reversed.*