Syllabus.

# Richmond.

## STANDARD OIL COMPANY v. CITY OF FREDERICKSBURG.

### March 1, 1906.

1. MUNICIPAL CORPORATIONS—*Taxation—General Laws—Constitution, Section 117.*—The general power of taxation conferred upon a city by its charter is not taken away by section 117 of the Constitution, amending all city charters so as to conform to the Constitution which, by section 168, requires all taxes to be levied and collected under general laws. The object of the constitutional provision was to abrogate only such features of charters as were in conflict with the Constitution, and to forbid special acts in the future.

2. INTERSTATE COMMERCE—*Taxation—Property Permanently Located in State.*—A tax on property brought into the State which has become included with the general mass of property of the State, although in the original packages, is not an interference with interstate commerce.

3. FREDERICKSBURG—*Taxation—General Powers—Special P o w e r s — Licenses.*—The city of Fredericksburg has a general power of taxation conferred by its charter granted in 1821, and this general power is not repealed or abrogated by special act of March 23, 1871 (Acts 1870-'71, p. 265), similar to the provisions of section 1042 of the Code, allowing the city to require a license for anything done in the city for which a State license is required, nor is it repealed by section 1042 of the Code, and the city may, under its general power, impose a license on a business conducted in the city, if not withheld from taxation by the Legislature, although no license is required for said business by the State.

4. MERCHANT—*What Constitutes.*—An oil company which keeps a storage tank and warehouse within a city from which it delivers oil by tank wagons to its customers, but which has no fixed place of business within the city—no store or shop at or from which it sells oil—is not a merchant within the State law or the ordinance of a city imposing a license tax upon merchants, and cannot, by voluntarily paying a State license as a merchant, prevent the assessment of a specific tax against its business.

5. TAXATION—*Uniformity—Licenses—Discrimination.*—Uniformity in taxation must be such as is compatible with the subject matter, and, as to licenses, the only uniformity required is that the tax shall be the same on all those in the same business. The mere fact that only one person, firm or corporation falls within a class upon which a license tax is imposed, does not of itself make the tax amenable to the charge of discrimination.

6. TAXATION—*Discriminations—Classification—Reasonable Distinctions.* Classification of subjects for taxation for the purpose of uniformity must be based on reasonable and just grounds of difference, and apply equally to all similarly situated. A city ordinance is invalid which imposes one rate of taxation on those who sell oil brought into the city in tank cars or pipes, and a less rate on those who sell oil brought into the city in some other way. Such a classification rests on no reason of public policy, and there is no substantial difference of situation or circumstances between the two classes of vendors. An ordinance, however, which imposes one rate of taxation on those who sell oil from tank wagons or barrels transported through the streets of a city, and another and lower rate on those who sell in a different way, is valid. The difference in the manner of distribution is a reasonable classification as one imposes a greater burden on the streets, and is more hazardous than the other.

Error to a judgment of the Corporation Court of the city of Fredericksburg, rendered on a motion by the Standard Oil Company to be relieved from an erroneous assessment of a license tax. To a judgment overruling the motion, this writ of error was awarded.

*Affirmed.*

The opinion states the case.

*William D. Carter,* for the plaintiff in error.

*St. Geo. R. Fitzhugh,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This is a writ of error to so much of a judgment of the Corporation Court of the city of Fredericksburg as upholds the validity of a license tax of $150.00, imposed by ordinance of the city upon plaintiff in error, for the year beginning May 1, 1904, and ending April 30, 1905.

The learned judge of the Corporation Court has, in a written opinion, made a part of the record, stated the case fully, and discussed in a very satisfactory manner the principles of law applicable thereto, and we, therefore, adopt it as a part of this opinion.

"The defendant, the city of Fredericksburg, for the year 1903, levied a license tax of $150.00 on the plaintiff under section 54 of its tax ordinance, which is as follows:

" 'Any person, firm, or corporation who shall engage in the business of selling to wholesale or retail merchants in this city kerosene oil or other illuminating oil, shall pay a license tax of one hundred and fifty dollars ($150.00), but this shall apply only to any person, firm or corporation who shall transport such oils in bulk, tank cars, or through pipes for the purpose of distributing the same in this city. Any person, firm or corporation who shall engage in the business of selling to wholesale or retail merchants in this city kerosene oil or other illuminating oil, the same having been transported for distribution in barrels only, shall pay a license tax of seventy-five dollars ($75.00).'

"The defendant for the year 1904 levied a license of $150.00 against the plaintiff under section 73 of its license tax for that year, which is as follows:

" 'Any person, firm, or corporation, who shall engage in the business of selling or offering for sale to wholesale, or to both wholesale and retail, merchants in this city, kerosene oil or other illuminating oil, shall pay a license tax of $150.00. Any person, firm, or corporation, who shall engage in the business of selling

or offering to sell only to retail merchants in this city kerosene oil or other illuminating oil, shall pay a license tax of $150.00. Any person, firm or corporation, who shall engage in the business of selling or offering to sell to consumers in this city kerosene or other illuminating oil, shall pay a license tax of $150.00.

" 'But this section shall apply only to any person, firm, or corporation producing, refining or manufacturing the oil which it sells, or offers to sell, or to any person, firm, or corporation who stores its oil in stationary tanks within or outside of the corporate limits of the city, and transports the same by means of tank wagons, or in barrels, through the streets of the city for the purpose of the distribution or delivery of the oil to purchasers thereof at the place of business of such purchaser.'

"For the 1903 license the collector of the city of Fredericksburg levied on a team of the plaintiff in the city of Fredericksburg, and by agreement between city and the plaintiff, the plaintiff deposited in the National Bank of Fredericksburg, subject to the joint order of counsel for plaintiff and defendant, the money to pay the license, and the levy was released. Just before this deposit of money the plaintiff filed its motion after due notice in this court for relief from the said 1903 assessment, and its motion was duly docketed on the 20th day of January, 1904. The motion for relief from the 1904 license was similarly served, returned, and docketed on June 25. 1904, and the two motions were continued from time to time at the convenience of the counsel and were argued and heard together by agreement of counsel on the —— day of ——————, 1904.

"The evidence in each case was the same, and briefly stated was, that the Standard Oil Company, the plaintiff, buys some crude oil and produces large quantities of crude oil; that it refines crude oil so bought and produced; that this refined oil is shipped by the company in barrels or tank cars to its plant in

Fredericksburg, Virginia, where the same is received; that its plant in Fredericksburg is provided with storage tanks or vats of a large capacity, which vats or tanks are used to receive the oil upon its arrival in Fredericksburg; that its local agent has a line of customers and seeks new customers among the merchants of the city of Fredericksburg; that the oil from these storage tanks is run, or pumped, into a tank wagon of several hundred gallons' capacity, which wagon is drawn by a team; that this wagon is driven by the local agent of the company along its regular route in the city of Fredericksburg; that it will be stopped before the store of a merchant who is denominated a 'regular customer'; that the merchant is asked if he wishes any oil, and if he wants as much as twenty gallons, the agent will draw the same from the tank wagon in cans while the wagon is standing in front of, or near, the merchant's door in the public street, and that the oil in the cans will then be taken by the agent into the merchant's store and emptied into the merchant's can; and that the agent, with his wagon, will proceed from store to store in the like sale or sales of oil; that should any 'regular customer,' when asked if he wished oil, not desire as much as twenty gallons, none will be delivered to him at that time; that payments by the merchants for oil so received are made to the local agent from time to time as demanded; and that the local agent will supply 'new customers' after first receiving their request for oil, and the company or the agent satisfying itself or himself that the 'new customer' is a desirable addition to the number of 'regular customers'; that the company is engaged in the sale of other articles not manufactured by it, but bought or manufactured for it and inducive to a larger sale and consumption of its oils, such as oil stoves and gasoline stoves, etc., and that the company sells the by-products derived from the refining of its crude petroleum.

"Under this state of the facts the company had itself assessed by the Commissioner of the Revenue of Fredericksburg, acting on behalf of the State, with a merchant's license from the State, and declined to pay the specific tax on a dealer in kerosene and other illuminating oils required by the ordinances set out above.

"The company contended—

"First. That the city has no power under its charter, or under the statute law of Virginia, to levy any such license tax.

"Second. That the ordinance under which the said license tax is demanded is unconstitutional, invalid and void, because of sections 117, 168 and 170 of the Constitution of Virginia.

"Third. That the said license 'is a direct discrimination and contrary to law.'

"Fourth. That the Standard Oil Company cannot be taxed in this State for selling its own product—illuminating oil.

"These contentions are directed against the validity of each license tax, and each and every contention is denied by the city.

"They will be examined in the order set out above.

"The power of the city to levy the licenses in these two cases is denied, because, since the State exacts no such license, and since section 168 of the Constitution provides that the license tax 'shall be levied and collected under general law,' that if the city ever had the power under its charter, that power is taken away by section 117 of the Constitution, which amends the charter of the city to conform to section 168 of the Constitution, and that such a license could be required only under *general law* thereto especially authorizing all the cities of the Commonwealth to levy such a license tax.

"This contention has been decided against the plaintiff company by the Supreme Court of Appeals of Virginia in *Hicks* v. *Bristol,* 102 Va. 861, 47 S. E. 1001, and in *Arey* v. *Lindsay,* 103 Va. 250, 48 S. E. 889. In this latter case the court, speak-

ing by Judge Buchanan, says: 'There is no indication of a purpose to repeal existing laws, valid when passed, whether special enactment or otherwise.'

"The manifest purpose of the authors of the Constitution 'was to meet and obviate the evils attending the passage of special acts' and that 'the Constitution did not intend to abrogate a charter, or any part of it,' because it had been passed as a 'special act, but only such features of the charter as were in conflict with the Constitution, and to forbid special acts in the future.'

"The power of the city to levy this license against the plaintiff is denied because 'the Standard Oil Company cannot be taxed in this State for selling its own property, illuminating oil'; or, according to contention of the plaintiff, because it is engaged in interstate commerce.

"The contention is without merit. No sales are made of property without this State at the time of sale. On the contrary, the property, for the sale of which the license is required, is, at the time of sale, within the State of Virginia and the city of Fredericksburg, and is in the barrels or tanks of the company, or in its wagons on the streets of Fredericksburg, at the time of the sale. It has become included with the general mass of property of the State, and whether sold in original barrels or from the plaintiff's wagons may be taxed, so far as interstate commerce is concerned. This question is disposed of by the case of *Amer. Steel & Wire Co.* v. *Speed,* 192 U. S. 500, 48 L. Ed. 538, 24 Sup. Ct. 365. See also *Welton* v. *State,* 91 U. S. 275, 23 L. Ed. 347; *Brown* v. *Houston,* 114 U. S. 622, 29 L. Ed. 257, 5 Sup. Ct. 1091.

"There being, therefore, no constitutional inhibition against the exercise by the city of any legitimate taxing power it may have in its charter, notwithstanding this charter be a special act, the question is, Has the city of Fredericksburg, in its

charter, the power to levy the license in question? Is this license discriminatory, and denying the plaintiff the equal protection of the law?

"By its charter, approved March 5, 1821, Acts 1821, page 132, section 7, it is provided, That the mayor, recorder and common council shall have full power, and they are hereby authorized to assess a tax on the inhabitants and property within the actual limits of said town for the purpose of repairing streets and such other expenses and charges as to them may seem necessary and proper, and for the improvement, convenience and well being of the town.

"This section stands unrepealed, unless, as plaintiff contends, it was repealed by act of March 23, 1871, Acts 1870-'71, page 265, which act provides 'that for the better government and well ordering of the town of Fredericksburg . . . .

" 'Section 7. Whenever anything for which a State license is required is to be done in said town, the council may require a town license therefor, and may impose a tax thereon for the use of the town. The council may require from the person so licensed a bond with sureties, payable to said town in such penalties and with such conditions as it may think proper and reasonable, and may revoke such license at any time if the condition of said bond be broken.'

"The Act of March 5, 1821, confers on the defendant city a general power to tax, similar in its provisions to a like general power conferred upon many cities of the Commonwealth by their charters; and it is the opinion of this court that this general power is not repealed or abridged by section 7 of the act of March 23, 1871, as above set forth. This section 7 is but an expression of the general law of the State, similar in its provisions to section 1042 of the Code of Virginia, which has been the law of the State since 1849.

"As section 1042 has never been held to be a limitation upon the general taxing power of the cities of the Commonwealth, granted to them in their several charters, so this court will hold that the act of March 23, 1871, similar in its terms to section 1042 of the Code, is not a limitation upon, and to that extent, a repeal of, the general power of taxing granted to the defendant city by its charter act of March 5, 1821. *Newport News, etc., Railway and Electric Company* v. *Newport News,* 100 Va. 157, 40 S. E. 645; *City of Norfolk* v. *Griffith Powell Company,* 102 Va. 115, 45 S. E. 889. These recent cases, cited above, hold that a general power of taxation confers upon the municipality all the powers possessed by the State in respect to the imposition of taxes, and the municipality may then impose taxes in its discretion upon all subjects within its jurisdiction and not withheld from taxation by the Legislature, whether they be taxed by the State or not. *Frommer* v. *City of Richmond,* 31 Gratt. 646, 630, 31 Am. Rep. 746.

"The plaintiff is not a merchant, as that term is generally understood, and cannot, by voluntarily paying a State license as a merchant, prevent the assessment of a specific tax against its business. The greater portion of what it sells, it does not buy. It has storage tank and warehouse, it is true, but it has no fixed place of business within the city—a store or shop at which, or from which, it sells its oil. Its sales are made from its tank wagons, and the oil sold is delivered from its tank wagons when, and as, the sales are made. This does not constitute it a merchant within the State law or city ordinance. *Brown's Case,* 98 Va. 369, 36 S. E. 485, 2 Bouv. L. D. 155; *Hirsh's Case,* 21 Gratt. 785; Acts 1899-1900, p. 857.

"In *Brown's Case, supra,* the court says: 'A merchant's license contemplates that the merchant is to have a fixed place of business within a county or city, a store or shop for the sale of

goods. This is the common acceptation of the term as given in. 2 Bouvier L. D. 155. The same author defines the word 'merchant' in its legal acceptation to mean one whose business it is to buy and sell merchandise, and says that it applies to all persons. who habitually trade in merchandise.'

"This court, therefore, holds that the plaintiff is liable for the said license taxes, unless they, or either of them, be invalid because discriminatory, or because they deny to the plaintiff the equal protection of the law.

"If the purpose is within the legal powers of the Legislature and the classification made has reference to that purpose (ex-cludes no persons or objects that are affected by the purpose; includes all persons that are), logically speaking, it will be appropriate; legally speaking, a law based upon it will have equality of operation. *Billings* v. *Illinois,* 188 U. S. 97, 47 L. Ed. 403, 23 Sup. Ct. 272.

"The differences must bear a just and proper relation to the attempted classification. *Gulf C. & S. F. Co.* v. *Ellis,* 165 U. S. 150, 41 L. Ed. 66, 17 Sup. Ct. 255.

"An ordinance requiring dealers in oils to pay a license of $250.00 per year, and providing that this license shall not apply to dealers handling oils on which the license has been paid, is unconstitutional because there is no reasonable ground for classification. (S. C. 1903) *Standard Oil Company* v. *City of Spartansburg,* 44 S. E. 377.

"No greater burdens shall be laid upon one than are laid upon others in the same calling and condition. *Barbier* v. *Connolly,* 113 U. S. 27, 31, 28 L. Ed. 924, 5 Sup. Ct. 357.

"Uniformity must be such as is compatible with the subject matter, and as to licenses the only uniformity required is that the tax shall be the same on all those in the same business. *Commonwealth* v. *Moore & Goodsons,* 25 Gratt. 958.

"If inequality and want of uniformity in the burden it imposes are stamped upon the face of the law, the law must be pronounced invalid. *Helfrick's Case,* 29 Gratt. 849.

"Uniformity must be such as is compatible with the subject matter, and as to the licenses the only uniformity required is that the tax shall be the same on all those in the same business. *Newport News, &c., R. Co.* v. *Newport News,* 100 Va. 161, 40 S. E. 645.

"It is not necessary that a statute regulating the sale of goods shall embrace all kinds of property, either personal or real, but it is sufficient if the selection of the articles and property is based on reasonable and just grounds of difference . . . . and applies equally to every citizen and all classes of citizens, and denies to no one a privilege which another is permitted under like circumstances to exercise and employ.  8 Cyc. 1069.

"A municipal ordinance imposing licenses or business taxes must not discriminate against any business, or class of business, or against non-residents, or persons engaged in the sale of property produced or manufactured outside the municipality.  21 Amer. & Eng. Ency. Law 784.

"When tested by these rules . . . section 54 of the ordinance of 1903 is either invalid or does not apply to the facts of this case.  This section applies, by its terms, 'only to any person, firm, or corporation who shall transport such oils in bulk, tank cars, or through pipes, for the purpose of distributing the same in this city.'  If the word 'transfer' in this section applies to the distribution of oil through the city after the same shall have reached the company's storage tanks, then the section does not apply, because, under the facts of the case, the company did not 'transport,' or carry, the oil about the streets of the city for sale 'in bulk, tank cars or through pipes'; if the words 'transport such oils in bulk, tank cars, or through

pipes' refers to the method by which the oil is brought from other places into the city for storage in the company's tanks, then the ordinance must be held to be invalid, because, it seems, such a classification, or attempted classification, is unequal, not uniform, and the $150.00 license tax imposed on the sale of it discriminates against the company's business when such a tax, under the language of the section, would not be imposed upon the sale of the oil produced, or manufactured inside the city, or upon the sale of the oil brought into the city in any manner other than in bulk, tank cars, or through pipes. The business sought to be reached by this ordinance is the 'selling to wholesale or retail merchants in this city kerosene or other illuminating oil,' and is not the business of buying and selling oil. The method or manner by which the oil is introduced into the city before a sale can hardly be said to bear a just and proper relation, or, in fact, any relation at all, to the actual sale of the oil after the same shall have been brought into the city and before an actual sale, or offer of sale, for the same. The business is the selling of oil to wholesale or retail merchants, and the tax of $150.00 sought to be levied under this section is not placed upon all who sell to retail or wholesale merchants in the city, but is placed only on those who sell to wholesale or retail merchants in the city, and whose oil, which is the subject of the sale, shall have been transported into the city in tank cars or through pipes. *Commonwealth* v. *Moore & Goodsons,* 25 Gratt. 958.

"This classification rests on no reason of public policy, and there is no substantial difference of situation or circumstances between the oil merchant who sells by wholesale or retail oil not transported into the city in tank cars or through pipes, and the merchant who does sell by wholesale or retail oil that is transported into the city in tank cars or through pipes.

"There is nothing of difference in the two businesses of sell-ing oil, arising from the method by which the oil was trans-ported into the city, that would naturally suggest the justice or expediency of diverse legislation with respect to the classifica-tion attempted in this section. *Rosenbloom* v. *State* (Neb.), 89 N. W. 1053, 57 L. R. A. 922 and cases cited.

"The ordinance of 1904, when tested by the same rules, is valid and binding. It requires a license of $150.00 on those engaged 'in the business of selling or offering for sale to whole-sale, or to both wholesale and retail, merchants in the city, kero-sene or other illuminating oil,' and applies 'to any person, firm, or corporation who stores its oil in stationary tanks within or outside said corporate limits of the city, and transports the same by means of tank wagons or in barrels through the streets of the city for the purpose of distribution or delivery of the oil to purchasers thereof at the place of business of such pur-chasers.'

"The manner of distribution of oil through the city and the sale of the same through the city 'by means of tank wagons or in barrels,' it appears, is a reasonable classification.

"Certainly this manner and method of the sale and of the distribution imposes greater burdens on the streets of the city than if the distributions were not made by tank wagons or in barrels; and again, the distribution of oil through the city, in the sales thereof from door to door and the running of oil from the tank wagon to the cans for delivery to the stores, in itself renders the sale and delivery of oil in this manner more hazard-ous than otherwise, and the ordinance of 1904 applies to all engaged in the same business. *Newport News, &c., Railway Company* v. *City of Newport News,* 100 Va. 157, 40 S. E. 645.

"For these reasons an order will be entered relieving the plaintiff from the license tax assessed against it under the ordi-

nance of 1903, and denying its motion for relief from the license assessed against it under the ordinance of 1904."

As to the power of defendant in error, under its charter, to impose the license tax that plaintiff in error complains of, see also *Ould & Carrington* v. *City of Richmond,* 23 Gratt. 464, 14 Am. Rep. 139, where the authority in the city's charter to impose the tax on the license of Ould & Carrington to practice law complained of was "For the execution of its powers and duties the city council may raise annually, by taxes and assessments in said city, such sums of money as they shall deem necessary to defray the expenses of the same, and in such manner as they shall deem expedient, in accordance with the laws of this State and of the United States."

That the act of March 23, 1871, *supra,* similar in its terms to section 1042 of the Code, is not a limitation upon, and to that extent a repeal of, the general power to tax granted to defendant in error by section 7 of its charter—act of March 5, 1821—or section 1042 of the Code, a limitation upon the general taxing power of the cities of the Commonwealth, granted to them in their several charters. See *Norfolk* v. *Norfolk Landmark Co.,* 95 Va. 564, 28 S. E. 959, and *Ould & Carrington* v. *City of Richmond, supra.*

The fact that only one person, firm, or corporation falls within a class upon which a license tax is imposed, does not of itself make the tax amenable to the charge of discrimination.

The judgment of the Corporation Court is affirmed.

*Affirmed.*