[No. 26211. *En Banc.* August 26, 1936.]

BENJAMIN FRANKLIN THRIFT STORES, INC., *et al.,*
*Appellants,* v. H. H. HENNEFORD *et al.,*
*Respondents.*[1]

[1]Reported in 60 P. (2d) 86.

*Frank R. Jeffrey,* for appellants.

*The Attorney General* and *R. G. Sharpe, Assistant,* for respondents.

*Hyland, Elvidge & Alvord, amicus curiae.*

BEALS, J.—This action was instituted by nine corporations, operators of so-called "chain stores" within the state of Washington, for the purpose of restraining the collection of the business or occupation tax which plaintiffs alleged the defendants, as tax commissioners of the state of Washington, proposed to levy against plaintiffs in the amount of one-half of one per cent on plaintiff's activities, in so far as the same consisted of distributing commodities from their warehouses to their respective retail stores. After the trial of the action, the court entered its decree enjoining the defendants from collecting from plaintiffs, based upon the activities above mentioned, a tax of more than one-fourth of one per cent. From this decree plaintiffs have appealed, contending that the trial court should have enjoined defendants from

collecting any tax whatever upon the branch of their business referred to.

The portion of the revenue act of 1935 (Laws 1935, chapter 180, title II, p. 709; Rem. 1935 Sup., § 8370-4 [P. C. § 7030-64] *et seq.*) pertinent to this inquiry reads as follows:

"Sec. 4. From and after the first day of May, 1935, there is hereby levied and there shall be collected from every person a tax for the act or privilege of engaging in business activities. Such tax shall be measured by the application of rates against value of products, gross proceeds of sales, or gross income of the business, as the case may be, as follows: . . .

"(c) Upon every person engaging within this state in the business of making sales at retail; as to such persons, the amount of tax with respect to such business shall be equal to the gross proceeds of sales of the business, multiplied by the rate of one-quarter of one per cent.

"(d) Upon every person engaging within this state in the business of making sales at wholesale; as to such persons the amount of tax with respect to such business shall be equal to the gross proceeds of sales of such business multiplied by the rate of one-quarter of one per cent.

"The tax imposed under this subsection (d) shall likewise be imposed upon persons engaged in distributing articles of tangible personal property owned by them from a warehouse or other central location to a group of retail stores, the intent hereof being to impose the wholesaling tax upon persons performing functions essentially comparable to those of a wholesaler, but not actually making sales; as to such persons, the amount of tax, with respect to such business, shall be equal to the value of the articles distributed, multiplied by the rate of one-half of one per cent; this value shall correspond as nearly as possible to the gross proceeds from sales at wholesale in this state of similar articles of like quality and character, and in similar quantities by other taxpayers. The tax

commission shall prescribe uniform and equitable rules for the purpose of ascertaining such value. If the provisions of this paragraph, for any reason, shall be adjudged invalid, such judgment shall not invalidate the provisions of the first paragraph of this subsection. . . .

"Sec. 5. For the purpose of this title, unless otherwise required by the context: . . .

"(c) The word 'sale' means any transfer of the ownership of, or title to, property for a valuable consideration. It includes conditional sale contracts, leases with option to purchase and any other contract under which possession of the property is given to the purchaser but title is retained by the vendor as security for the payment of the purchase price. It shall also be construed to include the furnishing of food, drink, or meals for compensation whether consumed upon the premises, or not; . . .

"(e) The term 'sale at wholesale' or 'wholesale sale' means any sale of tangible personal property which is not a sale at retail; . . ." (Laws 1935, chapter 180, pp. 709, 711, Rem. 1935 Sup., §§ 8370-4, 8370-5 [P. C. §§ 7030-64, 7030-65].)

The trial court held that, in so far as the act purported to require the collection of a tax in the amount of one-half of one per cent, the same is unconstitutional and void, and, as above stated, restrained respondents from attempting to collect

". . . any amount of tax in excess of the value of the articles distributed as provided in the second paragraph of said section 4 (d) multiplied by the rate of one-quarter of one per cent."

In other words, the court, being of the opinion that a tax of one-half of one per cent, because unequal and discriminatory, was obnoxious to Federal and state constitutional provisions, but that a tax in a sum equal to one-quarter of one per cent would be valid, restrained respondents from collecting that portion of

the tax provided by the legislature which exceeded the amount which the legislature, in view of the other provisions of the act, could lawfully establish.

Appellants vigorously attack the decree from which they appeal, arguing that any such tax is unequal and discriminatory, and that the trial court usurped legislative functions and, by its decision, set aside the express will of the legislature in refusing to restrain respondents from collecting a tax in a less amount than that provided for by the statute. As no cross-appeal was taken, we are not concerned with any question as to the possible right of the legislature to require from appellants the payment of a tax in any amount greater than one equal to one-quarter of one per cent of the business activities referred to.

Appellants vigorously contend that the portion of the statute of which they complain is unconstitutional, because it places the distribution or transfer of merchandise from a warehouse to a single store in one class, levying no tax thereon, and places the distribution of merchandise from a warehouse to a group of two or more retail stores in another class, and subjects such distribution to taxation. It is contended that such classification is arbitrary and unconstitutional, and that no reasonable distinction can be drawn between the two classes sufficient to sustain such discrimination. In support of this contention, appellants cite the case of *Los Angeles v. Lankershim,* 160 Cal. 800, 118 Pac. 215, in which the court held void an ordinance which sought to impose a tax upon the occupation of renting rooms in buildings which contained more than thirty rooms, but imposed no tax in case the building contained less than thirty rooms. In the course of its opinion, the court referred to the well-settled rule that "a court will be zealous in its search for any substantial ground for upholding such an

ordinance when attacked," while holding in the case before it that the ordinance was clearly obnoxious to constitutional and charter provisions.

The case of *Moffitt v. Pueblo,* 55 Colo. 112, 133 Pac. 754, is also cited by appellants. In that case, the supreme court of Colorado held invalid a law imposing a license fee upon persons selling goods from a car or warehouse or other place not directly under the seller's control, but did not levy a tax upon persons making sales from a place owned or controlled by the seller. In the case cited, the court, in its opinion, calls attention to the distinction between an ordinance expressly authorized by specific and definite legislative authority and one which a municipality assumes to pass under its incidental powers or under a general grant of authority, and states that an ordinance falling within the former classification will be upheld unless it conflicts with the national or state constitution, while an ordinance falling within the latter classification will be declared invalid unless it be reasonably fair and impartial and not arbitrary or oppressive, citing *Phillips v. Denver,* 19 Colo. 179, 34 Pac. 902, 41 Am. St. 230. A legislative enactment levying a tax as a purely revenue measure will, of course, be upheld unless it clearly falls within some constitutional prohibition.

The decision of the supreme court of the United States in the case of *Quaker City Cab Co. v. Pennsylvania,* 277 U. S. 389, 48 S. Ct. 553, is also relied on by appellants. In that case, the supreme court held invalid a statute of the state of Pennsylvania imposing a tax upon the gross receipts of a corporation engaged in the business of operating taxicabs, but not levying the tax upon the receipts of individuals engaged in a similar business; clearly, an unlawful discrimination.

Other cases in which statutes or ordinances levying taxes were held void because of inequality or unlawful discrimination are also cited. These cases are all of interest and have some bearing upon the situation here presented. We are, however, of the opinion that they are not controlling. The use of a warehouse in connection with a single store, it seems to us, differs materially from the use of a warehouse in supplying several stores. Every retail establishment, outside of the very smallest, must have a warehouse or storeroom. If goods are transferred from such a place to a single store only, the transfer cannot be said to rise to the dignity of even a portion of a business or occupation. If two or more establishments are supplied from the depot, a different situation is presented, and a tax applicable to one business and not to the other is not comparable to a tax to be levied upon the use of a building of thirty rooms and not on the use of one containing twenty-nine rooms.

Appellants also rely upon the opinion of the supreme court of the United States in the case of *Stewart Dry Goods Co. v. Lewis,* 294 U. S. 550, 55 S. Ct. 525. A statute of the state of Kentucky, which imposed a graduated tax upon every retail merchant, to be computed upon the volume of annual gross sales, was held arbitrary and unequal as between persons similarly situated. The amount of tax to be paid depended entirely upon the relative volume of business done by the merchant subject to the tax, the rate increasing as the volume of sales increased. This would result in the payment of different amounts of tax for the privilege of doing exactly the same act, because one person accomplished a greater volume of sales than another. In considering the validity of the tax, the court said:

"Thus understood, the operation of the statute is unjustifiably unequal, whimsical and arbitrary, as much so as would be a tax on tangible personal property, say cattle, stepped up in rate on each additional animal owned by the taxpayer, or a tax on land similarly graduated according to the number of parcels owned."

This case would be in point if no distinction existed between the maintenance of a warehouse for the supply of one store and the maintenance of a warehouse for the supply of two or more. As above stated, we are of the opinion that the two propositions are essentially different.

In the case of *Standard Oil Co. v. Fredericksburg,* 105 Va. 82, 52 S. E. 817, the court held void a city ordinance exacting a license fee for selling oil to merchants, the ordinance applying only to those selling oil transported into the city in tank cars or through pipe lines. Here, again, was presented a case involving merely a city ordinance providing for the payment of a license, and the court held that the classification was discriminatory and the ordinance void.

In the case of *State ex rel. Wyatt v. Ashbrook,* 154 Mo. 375, 55 S. W. 627, 77 Am. St. 765, 48 L. R. A. 265, the supreme court of Missouri held unconstitutional a statute requiring merchants employing more than fifteen persons to pay a license fee, which was not required of merchants employing a less number of persons.

In the case of *Frost v. Corporation Commission,* 278 U. S. 515, 49 S. Ct. 235, a statute regulating the business of ginning cotton, which purported to prevent an individual engaging in such business save after a showing of necessity, while a corporation could operate without such showing, was held to violate the equal protection clause of the Federal constitution.

No reason exists for granting a special privilege to a corporation denied to an individual, and the attempted classification was clearly arbitrary.

Appellants cite many other cases, all of which are of interest and furnish some support for appellants' contentions here. Such problems as this are of great difficulty, and it is not easy to draw from the authorities any general principle which is determinative in deciding a particular case.

The supreme court of the United States has several times construed statutes enacted by different states in some wise affecting the operation of so-called "chain stores." In the case of *State Board of Tax Commissioners v. Jackson*, 283 U. S. 527, 51 S. Ct. 540, 73 A. L. R. 1464, there was considered a statute of Indiana providing for the licensing of stores and. making the operation of a store without a license a misdemeanor punishable by fine. The statute provided for a graduated tax per store, according to the number of stores operated under a single ownership, and a person affected by this branch of the statute applied for an injunction against the enforcement of the tax. A statutory three-judge court unanimously granted the injunction, and the case was appealed. The supreme court discussed the matter of the operation of chain stores, and in the course of its opinion said:

"The principles which govern the decision of this cause are well settled. The power of taxation is fundamental to the very existence of the government of the States. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. *Gell's Gap*

*R. Co. v. Pennsylvania,* 134 U. S. 232; *Southwestern Oil Co. v. Texas,* 217 U. S. 114; *Brown-Forman Co. v. Kentucky,* 217 U. S. 563. The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, *American Sugar Rfg. Co. v. Louisiana,* 179 U. S. 89, or if any state of facts reasonably can be conceived to sustain it. *Rast v. Van Deman & Lewis Co.,* 240 U. S. 342; *Quong Wing v. Kirkendall,* 223 U. S. 59. As was said in *Brown-Forman Co. v. Kentucky, supra,* at p. 573:

" 'A very wide discretion must be conceded to the legislative power of the State in the classification of trades, callings, businesses or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.'

"It is not the function of this Court in cases like the present to consider the propriety or justness of the tax, to seek for the motives or to criticize the public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the legislature if there are substantial differences between the occupations separately classified. Such differences need not be great. The past decisions of the Court make this abundantly clear."

After discussing many authorities, the court concluded that the statute violated neither the state nor Federal constitution, and the judgment of the district court was reversed, with instructions to dismiss the action.

In the later case of *Liggett Co. v. Lee,* 288 U. S. 517, 53 S. Ct. 481, 85 A. L. R. 699, a statute providing for the payment of a higher state tax on merchandise held in storage by chain stores, for sale at retail in their own establishments, than was to be levied under an-

other statute on merchandise stored by wholesale dealers, to be sold to the trade generally, was held valid as not inconsistent with the equal protection clause of the Federal constitution. Briefly stated, the statutes of the state of Florida provided, one for the imposition of a tax of one dollar fifty cents for each thousand dollars of merchandise held in storage by wholesale merchants, and the other for a tax of double that amount on stock in warehouses owned by chain stores. The court cited its earlier opinion in the case of *State Board of Tax Commissioners v. Jackson, supra,* and held that the differences in the methods of operating chain stores and other establishments selling the same character of goods was of such a nature that the two businesses might properly be placed in different classifications for purposes of taxation. The court again discussed the theory and method of chain store operation, and noted that the same

". . . constitutes a form and method of merchandising quite apart from that adapted to the practice of the ordinary individually operated small store or department store; and that the difference between an integrated and a voluntary chain is fundamental."

Later, the supreme court, in the case of *Fox v. Standard Oil Co.,* 294 U. S. 87, 55 S. Ct. 333, sustained a statute of West Virginia levying a graduated tax on chains of gasoline stations resting in single ownership against an attack on the law upon the ground that the tax was so oppressive and disproportionate as to amount to arbitrary discrimination and confiscation, in violation of the fourteenth amendment.

The supreme court of Michigan, in the case of *Smith Co. v. Fitzgerald,* 270 Mich. 659, 259 N. W. 352, upheld a state license tax levied by the legislature upon chain stores, holding that the business was subject to classification and taxation.

Other decisions in which the constitutionality of chain store legislation was considered are referred to in the notes in 73 A. L. R. 1481 and 85 A. L. R. 736.

Under modern conditions, the selling of merchandise to the public is an extremely complicated business. The supreme court of the United States having recognized the fundamental difference between "chains" and the individually operated store, however large, the legislature may properly follow the distinction to its local base, the warehouse, and for purposes of taxation place the occupations in different classes. Manifestly, if the legislature cannot do this, the store which purchases its stock from wholesalers buys its merchandise subject to a tax, while the same goods go upon the shelves of the retail chain store without payment of any corresponding imposition. A possible alternative would be a judicial holding that, without an equalizing tax, the levy upon the goods sold by the wholesalers would be subject to attack as discriminatory and unequal. We, of course, express no opinion as to the result of any such contention.

We hold, then, that the maintenance of a warehouse by the owner of two or more retail establishments, from which warehouse goods are conveyed to the stores from which they are sold to the public, constitutes a proper basis for such a levy as the legislature sought to impose in the statute now before us for review, and that the law is not obnoxious to attack upon the ground that the same is discriminatory or unequal because goods taken from a warehouse which supplies a single store are not so taxed.

In this connection, it is proper to note that appellants contend that the statute subjects appellants to double taxation, because the record discloses that some merchandise stored by appellants in their respective warehouses is purchased from wholesalers

and has already paid a tax of one-quarter of one per cent, under the provisions of paragraph 1, § 4 (d), p. 709. This question presents a matter of administration only, and if appellants' position be, in fact, well founded, would entitle them to relief, not against the law itself, but against levies which may be sought to be collected thereunder. If the state tax commissioners at any time seek to collect taxes which are, in fact and in law, obnoxious to the rule against double taxation, any person injuriously affected thereby may obtain relief in a proper proceeding.

Finally, appellants contend that the trial court erred in stepping down, as to them, the tax set up in the act in an amount equal to one-half of one per cent, to one-quarter of one per cent, to make the amount payable correspond with that levied upon sales at wholesale by § 4 (d), p. 709, above quoted. In this connection, appellants contend that, in this particular, the decree appealed from usurps legislative powers and extends wholly beyond proper judicial functions. In their answer, respondents disclaimed any intention of attempting to collect any sums greater than one-quarter of one per cent of the value of the property distributed from appellants' warehouses, thereby admitting that levies in any greater amount would either violate the fundamental laws of the land or, as respondents say, fail to comply with the legislative intention, as expressed in the act now under consideration.

It is, we think, evident that, without the levy of some tax upon goods distributed from appellants' warehouses, the financial structure which the legislature has attempted to set up would be to some extent unbalanced and would lack coordination. The question to be here determined, however, must, of course, be decided upon the facts and the law. Courts cannot

legislate, even though a law is manifestly defective; the judicial authority being limited to interpretation, in so far as statutory construction is concerned.

Section 212, p. 847, of the act reads as follows:

"If any title, section, subdivision of a section, paragraph, sentence, clause or word of this act for any reason shall be adjudged invalid, such judgment shall not affect, impair or invalidate the remainder of this act but shall be confined in its operation to the title, section, subdivision of a section, paragraph, sentence, clause or word of the act directly involved in the controversy in which such judgment shall have been rendered. If any tax imposed under this act shall be adjudged invalid as to any person, corporation, association or class of persons, corporations or associations included within the scope of the general language of this act such invalidity shall not affect the liability of any person, corporation, association or class of persons, corporations or associations as to which such tax has not been adjudged invalid. It is hereby expressly declared that had any title, section, subdivision of a section, paragraph, sentence, clause, word or any person, corporation, association or class of persons, corporations or associations as to which this act is declared invalid been eliminated from the act at the time the same was considered the act would have nevertheless been enacted with such portions eliminated: . . ." (Rem. 1935 Sup., § 8370-212 [P. C. § 7030-272].)

As we said in the case of *State ex rel. King County v. Tax Commission*, 174 Wash. 336, 24 P. (2d) 1094, referring to a section of similar tenor:

"Such a provision furnishes assurance to the courts that they may properly sustain the separate sections or provisions of a partially invalid act without hesitation or doubt as to whether they would have been adopted, even if the legislature had been advised of the invalidity of the part."

In the case of *Northern Cedar Co. v. French*, 131 Wash. 394, 230 Pac. 837, this court, in considering an

act in which certain provisions were attacked as unconstitutional, used the following language:

"An entire act will fall only where the constitutional and unconstitutional provisions are so connected and interdependent in subject-matter, meaning and purpose that it cannot be believed that the legislature would have passed the one without the other, or where the part eliminated is so intimately connected with the balance of the act as to make it useless to accomplish any of the purposes of the legislature."

Respondents argue that, as the second paragraph of subsection (d), *supra*, commences, "the tax imposed under this subsection (d) shall likewise be imposed" upon persons in appellants' situation, and as later in the section we find,

". . . the intent hereof being to impose the wholesaling tax upon persons performing functions essentially comparable to those of a wholesaler, but not actually making sales;" etc.,

it should be held that the words "one-half of one per cent" should be judicially eliminated, and that this deletion would leave a complete and workable act, under which appellants and others similarly situated would be required to pay the tax provided for in the decree now before us for review.

Appellants' argument on this phase of the case might well be urged against any contention that the court should equalize the different rates provided for by the act by directing that a tax of one-half of one per cent be levied upon sales by wholesalers, but, while such an order might well be deemed judicial legislation, we do not believe that the decree now before us is obnoxious to such an argument.

Appellants strenuously contend that the whole tax must fall because its provisions, as passed by the legislature, undoubtedly are discriminatory and unequal.

In this connection, it must always be remembered that statutes providing for the raising of money by taxation are the corner-stone of the legislative structure of the state. Courts will not hold them unconstitutional and void unless such a ruling is absolutely required. Here we have a most important statute providing for the raising of revenue. Two sections of the law do not coordinate and, in the opinion of the trial court, are discriminatory. Such a situation being presented, we are of the opinion that the trial court properly held that appellants should be required to pay a tax equal to that paid upon merchandise sold by wholesalers. The greater includes the less, and while, in view of other sections of the act, appellants may not be required to pay a tax computed on a basis of one-half of one per cent, the courts may properly relieve appellants from paying the illegal and unequal portion of this exaction and require that a tax be paid in an amount included within the discriminatory provision and equal to that paid by wholesalers generally.

In actions brought against governmental officers or agencies, in which is sought the reduction of alleged illegal taxes, the courts, if holding that the tax is excessive, do not set it aside, but merely restrain the collection of such portion thereof as lacks legal authority.

We are of the opinion that the method of statutory construction which we follow in this case is consistent with law, sound precedent and reason, pays attention to substance rather than form, and gives effect to the legislative intention clearly expressed as to the spread of the tax which the legislature has decreed be paid.

In the early case of *Wiley v. Parmer,* 14 Ala. 627, it was held that a statute taxing slaves owned by nonresidents at a rate higher than those owned by inhabitants of the state was discriminatory and void. The

judgment of the court, however, granted the plaintiffs relief only in the amount of the excess over the tax to be paid by residents of the state.

The supreme court of Nebraska, in the case of *Century Oil Co. v. Department of Agriculture,* 112 Neb. 73, 198 N. W. 569, held that an act providing for fees for the inspection of petroleum products was void, in so far as the amounts to be paid greatly exceeded the cost of inspection. The act being held invalid as a revenue measure, its enforcement, however, was enjoined only to the extent that the fees to be collected exceeded the reasonable cost of inspection.

Careful consideration of the record before us and the arguments of the respective parties convinces us that the trial court did not err in entering the decree from which appellants have prosecuted this appeal. The same is accordingly affirmed.

MILLARD, C. J., BLAKE, MAIN, and TOLMAN, JJ., concur.

GERAGHTY, J., concurs in the result.

STEINERT, J. (concurring in the result)—Inasmuch as the respondents have not cross-appealed, I concur in the result.

HOLCOMB, J., dissents.