## C. F. SMITH CO. *v.* FITZGERALD.

1. Constitutional Law—Statutes—Presumptions.
   Statutes are presumed to be constitutional.

2. Same—Statutes.
   The Supreme Court must declare a statute unconstitutional where it is clearly in conflict with the Constitution of the United States or of this State.

3. Same—Statute Void When Legislature Prohibited from Enacting It.
   A statute is to be set aside only when it is apparent it was the result of action which the legislature was prohibited from taking.

4. Taxation—Essential to Government.
   The power of taxation is necessary to the existence of government, is an attribute of sovereignty and full control thereof is vested in the legislature subject to certain constitutional limitations (Const. 1908, art. 10).

5. Same—Extent of Power.
   Everything to which the legislative power extends may be the subject of taxation, whether it be person, property, possession, franchise, privilege, occupation or right (Const. 1908, art. 10).

6. Same—Collectors Must Have Express Authority.
   Tax exactions, property or excise, must rest upon legislative enactment, and collecting officers can act only within express authority conferred by law.

7. Constitutional Law—Taxation—Legislature—Courts.
   Since the powers of government are divided into three departments and no person belonging to one department may exercise the powers properly belonging to another except as the Constitution expressly so provides and the whole subject of finance and taxation is placed under the control of the legislature, that body must determine all questions of State necessity, discretion or policy in ordering a tax and in apportioning it, the judicial tribunals having no concern with the policy adopted (Const. 1908, arts. 4, 10.)

8. Same—Taxation—Proper Motives of Legislature Conclusively Presumed.

The court has no power to declare a statute imposing a tax unconstitutional upon the ground it is unjust or oppressive, since proper motives upon the part of the legislature are always to be conclusively presumed.

9. Same—Taxation.

The Constitution does not command faultless legislation nor require that the best possible system of taxation be adopted, but the fact that taxes may appear to the judicial mind as unjust or unnecessary constitutes no reason for judicial interference, if they are general and impartial.

10. Taxation—Methods Permitted by Constitution.

The Constitution of this State permits two general methods of taxation, *ad valorem* and specific (Const. 1908, art. 10, §§ 3, 4).

11. Same—Specific Taxes.

The rule of uniformity does not extend to property paying specific taxes, it being sufficient if such taxes are uniform upon the classes upon which they operate (Const. 1908, art. 10, §§ 3, 4).

12. Licenses—Chain Stores.

The license prescribed for chain stores is for the privilege of doing what is prohibited without such license (Act No. 265, Pub. Acts 1933).

13. Same—Taxation.

A tax on an occupation or privilege is not a tax on property, regardless of what it is called (Const. 1908, art. 10, §§ 3, 4).

14. Same—Taxation.

License taxes, privilege taxes and occupation taxes are specific taxes and not *ad valorem* taxes upon property (Const. 1908, art. 10, §§ 3, 4).

15. Same—Chain Stores—Constitutional Law—Classification.

License tax on chain stores *held*, not unconstitutional as violating rule of uniformity, where graduated according to number of stores operated (Const. 1908, art. 10, §§ 3, 4; Act No. 265, § 3, Pub. Acts 1933).

16. Same—Double Taxation—Chain Stores—Sales Tax.

Chain store license tax *held*, not void as double taxation because chain stores are also subject to sales tax, since latter is a tax upon the commodities sold and usually paid by customer, not upon the privilege of operating chain stores (Const. 1908, art. 10, § 4, Acts Nos. 167, § 23, 265, Pub. Acts 1933).

17. SAME—POWER TO TAX INVOLVES POWER TO DESTROY.

Fact that chain store license tax may result in putting a large number of chain stores out of business does not render act under which it is imposed unconstitutional, since the power to tax involves the power to destroy (Const. 1908, art. 10, § 4, Act No. 265, Pub. Acts 1933).

18. TAXATION—CLASSIFICATION—EXEMPTION.

What classes of rights or property shall be assessed for taxes and what shall be exempt is a matter for legislative determination within constitutional limitations (Const. 1908, art. 10, §§ 3, 4).

19. SAME—STATUTES—VALIDITY—CLASSIFICATION—EXEMPTION.

The State may classify property for purposes of taxation and statutes imposing taxes upon property are not invalid if they operate uniformly against or upon each class or if some classes are exempted altogether (Const. 1908, art. 10, §§ 3, 4).

20. LICENSES—TAXATION—CHAIN STORES—CONSTITUTIONAL LAW.

Chain store license tax act *held*, not unconstitutional because it exempts gasoline filling stations otherwise subject to *ad valorem* real estate tax, State sales tax and State and Federal gasoline taxes (Const. 1908, art. 10, § 4; Acts Nos. 167, 265, Pub. Acts 1933).

21. STATUTES—OBJECT EXPRESSED IN TITLE—CHAIN STORES.

Chain store license tax act *held*, not unconstitutional because title does not embrace the object of the act (Const. 1908, art. 5, § 21; Act No. 265, Pub. Acts 1933).

22. LICENSES—CHAIN STORES—TAXATION—CONSTITUTIONAL LAW.

Chain store license tax act *held*, not unconstitutional as not an honest revenue measure but a punitive one in disguise with dominant purpose being to create inequality and restrain trade, since tax legislation may not be invalidated because of supposed motives which induced it as the courts may not inquire into motives of legislature as to regularly enacted statutes (Act No. 265, Pub. Acts 1933).

23. CONSTITUTIONAL LAW—LICENSES—CHAIN STORES—EMPLOYEES' RIGHT TO CONTRACT.

Chain store license tax act *held*, not unconstitutional as depriving chain store employees of their liberty to engage in gainful occupations since they have no vested right in their respective jobs and are not deprived of liberty to contract (Act No. 265, Pub. Acts 1933).

24. LICENSES—CHAIN STORES—PENALTIES—CONSTITUTIONAL LAW.
     Daily penalties provided in chain store license tax act *held*, not
     so excessive as to render act unconstitutional (Act No. 265,
     § 11, Pub. Acts 1933).

25. STATUTES—SEVERING CLAUSE—PENALTIES—TAXATION.
     Invalidity of penal provisions of chain store license tax act
     would not impair taxing provisions of the act where it contains
     a severing clause (Act No. 265, §§ 11, 12, Pub. Acts 1933).

26. LICENSES—CHAIN STORES—MAJORITY STOCK OWNERSHIP—ULTI-
     MATE SINGLE CONTROL.
     Section of chain store license tax act which attempts to prevent
     ·   evasion by rendering act applicable to majority stock owner-
     ship or ultimate single control or management *held*, valid (Act
     No. 265, § 9, Pub. Acts 1933).

27. TAXATION—DOUBLE TAXATION.
     One may not raise the question of double taxation who is not
     injured thereby.

28. SAME—DOUBLE TAXATION PROHIBITED BY RULE OF UNIFORMITY.
     Double taxation is not permissible because prohibited by con-
     stitutional rule prescribing uniformity of taxation (Const.
     1908, art. 10, §§ 3, 4).

29. SAME—DOUBLE TAXATION—DEFINITION.
     Prohibited double taxation is where second tax is imposed upon
     the same property for the same purpose by the same State or
     government during the same taxing period, hence, tax on
     property belonging to a business and tax upon business is not
     double taxation (Const. 1908, art. 10, §§ 3, 4).

30. SAME—CORPORATIONS—FRANCHISES—DOUBLE TAXATION.
     Franchise taxes may be rightfully levied upon the franchise to
     be a corporation as well as the franchise to do business as a
     corporation without double taxation resulting therefrom since
     the franchise to be a corporation belongs to the corporators
     and the other to the corporation (Const. 1908, art. 10, §§ 3, 4).

31. SAME—CHAIN STORES—SALES—DOUBLE TAXATION.
     Neither the coexistence of the chain store license tax act im-
     posing a tax upon the right to do business in more than one
     store and the sales tax act measuring its tax by the amount of
     business done nor the imposition and collection of taxes there-
     under constitutes such double taxation as to render the latter
     act unconstitutional (Const. 1908, art. 10, §§ 3, 4; Acts
     Nos. 167, § 2, 265, § 3, Pub. Acts 1933).

Appeal from Wayne; Toms (Robert M.), J. Submitted June 21, 1934. (Docket No. 30, Calendar No. 37,772.) Decided March 6, 1935.

Bill by C. F. Smith Company, a Michigan corporation, against Frank D. Fitzgerald, as Secretary of State, and Patrick H. O'Brien, as Attorney General, to restrain the enforcement of the chain store tax under Act No. 265, Pub. Acts 1933, and for other relief. Kroger Grocery & Baking Company, an Ohio corporation, and others intervened as parties plaintiff. The Standard Oil Company (Indiana), an Indiana corporation, and others intervened as parties defendant. Bill dismissed. Plaintiff and intervening plaintiffs appeal. Affirmed.

*Harry H. Platt,* for intervening plaintiff Michigan United Cigar Stores, Inc.

*Butzel, Levin & Winston* and *A. Fellman (Robert S. Marx,* of counsel), for plaintiff and other intervening plaintiffs.

*Patrick H. O'Brien,* Attorney General, *I. Z. Acoff, M. Thomas Ward, Peter J. Monaghan, Jr.,* and *Edmund E. Shepherd,* Assistants Attorney General, for defendants.

*Arthur J. Abbott,* for intervening defendants.

POTTER, J. Plaintiff filed a bill of complaint to enjoin defendants, their agents, representatives and successors in office, during the pendency of suit from taking steps to enforce Act No. 265, Pub. Acts 1933, against plaintiff, its agents, servants and employees and all others similarly situated. It asked a permanent injunction and a declaration that Act No. 265, Pub. Acts 1933, is unconstitutional and void. Alter-

natively it asked that if Act No. 265, Pub. Acts 1933, was held constitutional and valid, the court declare the general sales tax law, Act No. 167, Pub. Acts 1933, null and void, and for other and further relief.

Kroger Grocery & Baking Company and a large number of other corporations and individuals intervened as plaintiffs. Standard Oil Company (Indiana), an Indiana corporation, and a number of other corporations engaged in the gasoline and oil business, intervened as defendants.

The bill of complaint attacked Act No. 265, Pub. Acts 1933, as unconstitutional on several grounds hereinafter more particularly discussed. Subsequently ancillary bills of complaint were filed by the intervening plaintiffs. Upon filing of the bill, a temporary injunction was issued. The principal defendants appeared through the attorney general and moved to dismiss the bill of complaint because plaintiff had an adequate remedy at law; the bill of complaint did not state a cause for equitable relief, and because Act No. 265, Pub. Acts 1933, and Act No. 167, Pub. Acts 1933, were constitutional and valid. A motion to dissolve the injunction issued was made by the attorney general for the reasons, the injunction was issued *ex parte* without a hearing and without notice to defendants; the court had no jurisdiction or power to enjoin the collection of any tax, and no jurisdiction or power to enjoin the collection of license fees or taxes provided by Act No. 265, Pub. Acts 1933, or to enjoin defendants from enforcing the act, because plaintiff had an adequate remedy at law and the bill of complaint did not state a cause for injunctive relief. Motions to dismiss were made on behalf of the intervening defendants. A stipulation that the motions to dismiss should be treated to apply to all ancillary bills as well as to the original

bill of complaint was filed. Stipulations were made between counsel for the respective parties relating to amendments, waiver of appeal bond, continuance of the temporary injunction, eliminating from the printed record on appeal the petition for intervention and orders made thereon and other purposes. The case was brought on for hearing upon the bill of complaint, the motions hereinbefore mentioned and the stipulations of counsel. The trial court filed an opinion and entered a decree dismissing the bill of complaint and the ancillary bills of interveners. Plaintiff and intervening plaintiffs appeal.

(1) The legislature passed, over the governor's veto, Act No. 265, Pub. Acts 1933, to provide for the licensing and taxation of chain stores. The act provides:

"From and after thirty days after this act shall take effect, it shall be unlawful for any person, firm, corporation, copartnership or association, either foreign or domestic, to establish, open, maintain or operate any branch or chain store within this State without having obtained a license so to do from the secretary of State of the State of Michigan." Act No. 265, § 1, Pub. Acts 1933.

"The term 'branch or chain store,' as used in this act is defined to mean and include any store or stores, or any mercantile establishment or establishments in excess of one which are owned, operated, maintained or controlled by the same person, firm, corporation, copartnership or association, either domestic or foreign, in which goods, wares or merchandise of any kind are sold at retail." Act No. 265, § 2, Pub. Acts 1933.

There is an exception in the act of any place or places of business commonly known as gasoline filling stations or gasoline bulk plants which deal

primarily in the sale or distribution of petroleum products. Act No. 265, § 2, Pub. Acts 1933.

The schedule of license fees prescribed by the act is contained in section 3 as follows:

"Every person, firm, corporation, copartnership or association establishing, opening, maintaining or operating within this State under the same general management, supervision, ownership or control, two or more stores or mercantile establishments where any goods, wares or merchandise are sold or offered for sale at retail, shall be deemed a branch or chain store operator, and for such stores established, opened, maintained or operated in excess of one shall pay the license fees hereinafter prescribed for the privilege of establishing, opening, maintaining or operating each such store or mercantile establishment in excess of one. The license fees herein prescribed shall, except as herein otherwise provided, be paid annually, and shall be in addition to any license fees, taxes on sales or *ad valorem* taxes now prescribed or now in effect, or as the same may hereafter be amended. The license fees to be paid by operators of branch or chain stores shall be as follows:

"1. Upon two stores or more but not to exceed three stores the annual license fee shall be ten dollars for each such store in excess of one.

"2. Upon four stores or more but not to exceed five stores the annual license fee shall be twenty-five dollars for each such store in excess of three.

"3. Upon six stores or more but not to exceed ten stores the annual license fee shall be fifty dollars for each such store in excess of five.

"4. Upon eleven stores or more but not to exceed fifteen stores the annual license fee shall be one hundred dollars for each such store in excess of ten.

"5. Upon sixteen stores or more but not to exceed twenty stores the annual license fee shall be

one hundred fifty dollars for each such store in excess of fifteen.

"6.   Upon twenty-one stores or more but not to exceed twenty-five stores the annual license fee shall be two hundred dollars for each such store in excess of twenty.

"7.   Upon each store in excess of twenty-five the annual license fee shall be two hundred fifty dollars for each such store in excess of twenty-five."

Plaintiffs attack the act as unconstitutional and the question presented for the consideration of the court is the validity of the act.

(2) Act No. 265, Pub. Acts 1933, was passed by a large majority of the members constituting a coordinate branch of government. They are presumed to have acted within the scope of their authority. We cannot suppose they intentionally spent their time in enacting a measure which they knew or had reason to believe would be ineffective and useless because unconstitutional. The members of the judicial branch of the government are sworn to uphold the Constitution of the United States and the Constitution of this State. In a clear case of conflict between the Constitution of the United States or the Constitution of this State and an act of the legislature, this court has no discretion but to uphold the provisions of the Constitution adopted by the people and set aside the enactment of the legislature outside the scope of their authority, and which the people have prohibited them by the Constitution from enacting. A statute is to be treated with that deference due to the deliberate action of a coordinate branch of government and is to be set aside only when it is apparent it was the result of action which the legislature was prohibited by the Constitution from taking. It is only thus the right

of the people to rule may be preserved from legislative absolutism and effect be given to the fundamental maxim of American jurisprudence that sovereignty resides in the people.

(3) Governments may effectively function only through officers, agents and employees. If these devote their time, energy and services to the affairs of government they are entitled to compensation; and, to pay compensation to the officers, agents and employees of government and enable the State to perform its functions, revenue is necessary. The most general method of raising revenue is by taxation. "It costs something to be governed." *Merrick* v. *N. W. Halsey & Co.*, 242 U. S. 568, 587 (37 Sup. Ct. 227, 231). The members of the convention which framed the Constitution and the people who adopted it knew the State government must have revenue to meet its necessities or cease to function. *Union Steam Pump Sales Co.* v. *Secretary of State,* 216 Mich. 261.

"Taxation is a mode of raising revenue for public purposes only, and, as is said in some of the cases, when it is prostituted to objects in no way connected with the public interests or welfare, it ceases to be taxation and becomes plunder." *People, ex rel. R. Co.,* v. *Township Board of Salem,* 20 Mich. 452, 474 (4 Am. Rep. 400).

"A tax is a portion of the property of the citizen required by the government for its support in the discharge of its various functions and duties, and may be imposed when either person or property is within its jurisdiction." *Graham* v. *Township of St. Joseph,* 67 Mich. 652, 655.

"The power of taxation is necessary in every government. *Sears* v. *Cottrell,* 5 Mich. 251. It is an attribute of sovereignty. Government deprived

of the power to accomplish the ends of its creation would be a nullity. *Charles River Bridge* v. *Warren Bridge,* 11 Pet. (36 U. S.) 419. The power of taxation is regarded as fundamental to the very existence of the government of the States. *State Board of Tax Com'rs of Indiana* v. *Jackson,* 283 U. S. 527 (51 Sup. Ct. 540, 73 A. L. R. 1464.) The power of the legislature of this State is as omnipotent as that of the parliament of England, save only as restrained by the Constitution of the United States and the Constitution of this State. *Sears* v. *Cottrell, supra; Harsha* v. *City of Detroit,* 261 Mich. 586 (90 A. L. R. 853); 1 Cooley, Constitutional Limitations (8th Ed.), p. 354. The power of taxation is vested in the legislature. Within constitutional limits the legislature has full control over the subject. *Attorney General* v. *Sanilac Supervisors,* 71 Mich. 16." *Thompson* v. *Auditor General,* 261 Mich. 624, 642.

See, also, 1 Cooley on Taxation (4th Ed.), § 57.

"The power of taxation rests upon necessity, and is an essential and inherent attribute of sovereignty belonging as a matter of right to every independent State or government, and it is as extensive as the range of subjects over which the power of that government extends. As to such subjects, and except insofar as it is limited or restrained by the provisions of the Constitutions, national and State, a State's power of taxation, if exercised for public purposes, is general, unlimited, and absolute, extending to all persons, property, and business within its jurisdiction, the only security against an abuse of the power being found in the structure of the government itself in that in imposing a tax the legislature acts upon its constituents." 61 C. J. pp. 76–78.

"The legislature has unlimited discretion as to the persons, property, or occupations to be taxed,

where there are no constitutional restrictions, provided the property is within the territorial jurisdiction of the State. * * * Everything to which the legislative power extends may be the subject of taxation, whether it be person or property, or possession, franchise or privilege, or occupation or right.'' 1 Cooley on Taxation (4th Ed.), § 71.

"No property is beyond the reach of that power unless put beyond it designedly and by an unequivocal act of the sovereign power." *Robertson v. Commissioner of State Land Office*, 44 Mich. 274, 276.

(4) Under the Constitution the powers of government are divided into three departments, the legislative, executive and judicial, and no person belonging to one department shall exercise the powers properly belonging to another except in the cases expressly provided in the Constitution. Constitution 1908, art. 4. The whole subject of finance and taxation is placed by the Constitution of this State under the control of the legislature. Constitution 1908, art. 10.

"Tax exactions, property or excise, must rest upon legislative enactment, and collecting officers can only act within express authority conferred by law. Tax collectors must be able to point to such express authority so that it may be read when it is questioned in court.'' *In re Dodge Brothers*, 241 Mich. 665.

The legislature must determine all questions of State necessity, discretion or policy in ordering a tax and in apportioning it. 1 Cooley on Taxation (4th Ed.), § 67. And the judicial tribunals of the State have no concern with the policy of State taxation determined by the legislature. 1 Cooley on Taxation (4th Ed.), § 67.

(5) The court has no power or authority to declare a statute imposing a tax unconstitutional upon the ground the tax is unjust or oppressive. Proper motives upon the part of the legislature are always to be conclusively presumed. 1 Cooley on Taxation (4th Ed.), § 67; *Flint & Fentonville Plank-Road Co.* v. *Woodhull,* 25 Mich. 99 (12 Am. Rep. 233).

"No instance is afforded from the foundation of the government where an act, which was within a power conferred, was declared to be repugnant to the Constitution, because it appeared to the judicial mind that the particular exertion of constitutional power was either unwise or unjust." *McCray* v. *United States,* 195 U. S. 27, 54 (24 Sup. Ct. 769, 1 Ann. Cas. 561).

The court may not substitute the personal views and ideas of its members for the wisdom and policy of the legislature. Courts have nothing to do with the policy of legislation nor the economic ideals involved, nor do they constitute a harbor of refuge from ill-advised, unjust or impolitic legislation. *Mobile County* v. *Kimball,* 102 U. S. 691; *Green* v. *Frazier,* 253 U. S. 233 (40 Sup. Ct. 499); *City of Traverse City* v. *Blair Township,* 190 Mich. 313, 321 (Ann. Cas. 1918 E, 81). The Constitution does not command faultless legislation nor require the best possible system of taxation be adopted. *People* v. *Latrobe,* 279 U. S. 421 (49 Sup. Ct. 377, 65 A. L. R. 1341).

"Taxes may be, and often are, oppressive to the persons and corporations taxed; they may appear, to the judicial mind, unjust and even unnecessary but this can constitute no reason for judicial interference." 1 Cooley on Taxation (4th Ed.), § 67.

"The judiciary would not venture to indicate limits to the power of the sovereign in this regard,

so long as its laws were general and impartial.''
*Robertson* v. *Commissioner of State Land Office,*
*supra.*

(6) Under the Constitution of this State there
are two general methods of taxation, *ad valorem*
and specific. *Pingree* v. *Auditor General,* 120 Mich.
95 (44 L. R. A. 679).

Article 10, § 3, of the Constitution of 1908, pro-
vides:

''The legislature shall provide by law a uniform
rule of taxation, except on property paying specific
taxes, and taxes shall be levied on such property as
shall be prescribed by law.'' etc.

The rule of uniformity does not extend to prop-
erty paying specific taxes. The legislature is given
authority to impose specific taxes which shall be
uniform upon the classes upon which they operate.
Constitution 1908, art. 10, § 4.

The chain store tax imposed in pursuance of Act
No. 265, Pub. Acts 1933, is designated in the title
of the act and in the body thereof as a license tax.

''The object of a license is to confer a right that
does not exist without a license. And consequently
a power to license involves, in the exercise of it, a
power to prohibit under a pain or penalty without
a license. Otherwise a license would be an idle
ceremony—giving no right, conferring no privilege,
and exempting from no pain or penalty. If the
right existed previous to the law requiring the li-
cense, it would not exist afterwards without such
license. The fact that a license is required to do an
act, is of itself a prohibition of such act without a
license.'' *Chilvers* v. *People,* 11 Mich. 43, 49.

''The popular understanding of the word license
undoubtedly is, a permission to do something which
without the license would not be allowable. This we

are to suppose was the sense in which it was made use of in the Constitution. But this is also the legal meaning. 'The object of a license,' says Mr. Justice Manning, 'is to confer a right that does not exist without a license.' *Chilvers* v. *People,* 11 Mich. 43, 49.'' *Youngblood* v. *Sexton,* 32 Mich. 406, 419 (20 Am. Rep. 654).

The license prescribed by Act No. 265, Pub. Acts 1933, is for the privilege of doing what is prohibited without such license.

"A careful study of the various provisions of the act persuades us that a privilege tax was intended rather than a property tax. The tax is not imposed upon the property, but upon the privilege." *Jasnowski* v. *Board of Assessors of Detroit,* 191 Mich. 287.

Although the distinction is sometimes a close one a tax on an occupation or privilege, whether it is called a license tax, an occupation tax or a privilege tax, is not a tax on property. 37 C. J. p. 171.

"There is no clear line of distinction between so-called 'license,' 'occupation' and 'privilege' taxes." 1 Cooley on Taxation (4th Ed.), § 45.

The rule of uniformity is not applicable to specific taxes. License taxes, privilege taxes and occupation taxes are specific taxes and not *ad valorem* taxes upon property. Usually the license tax law itself constitutes a sufficient apportionment of the specific license tax. The only constitutional requirement applicable to specific taxes is that they shall be uniform upon the classes upon which they operate. Constitution 1908, art. 10, § 4.

As said in *Jasnowski* v. *Board of Assessors of Detroit, supra:*

"It will be observed that all persons in a given class are treated alike. When this is accomplished

the constitutional mandate with reference to uniformity is satisfied."

(7) The principal ground upon which Act No. 265, Pub. Acts 1933, is attacked is that there is discrimination between the members of the particular classes fixed and defined by the act. It is contended the increase in rates bears no relation to the privilege of increase in the number of mercantile establishments, and the tax bears no relation to the privilege of adding units to an existing chain. It is alleged the inherent vice in the tax imposed by Act No. 265, Pub. Acts 1933, is that it taxes the privilege of smaller value at a higher rate and the privilege of higher value at a lower rate and there is no inherent plan in the program and no effort to articulate the tax to the facts of chain store operation. It is contended the tax violates article 10, § 4 of the Constitution of this State which provides that specific taxes shall be uniform upon the classes upon which they operate.

If we give due consideration to the constitutional provision and to the language of the supreme court of the United States in *Louis K. Liggett Co.* v. *Lee,* 288 U. S. 517 (53 Sup. Ct. 481, 85 A. L. R. 699), that "graduation of the tax according to the number of units operated cannot be said to be so unreasonable as to transcend the constitutional powers of the legislature," we are forced to the conclusion that Act No. 265, Pub. Acts 1933, does not violate the constitutional rule of uniformity when the classification is based solely upon the number of chain stores or mercantile establishments operated. The real objection to the statute is not that it violates the rule of uniformity, but that by establishing a uniform rule of taxation applicable to each class it is econom-

ically unjust and unsound. As said in *Youngblood v. Sexton, supra:*

"It may possibly be true that an apportionment according to the business done would have been more just; but a question of this nature concerns the legislature, and not us. Courts cannot annul tax laws because of their operating unequally and unjustly. If they could, they might defeat all taxation whatsoever; for there never yet was a tax law that was not more or less unequal and unjust in its practical workings. * * * But the objection to a want of uniformity is wholly misplaced here. Uniformity is the very basis of this tax. It is levied entirely without discrimination; and the real objection made to it is, not that it lacks uniformity, but that the legislature were unjust in making it uniform, instead of levying it by some standard of discrimination. The objection presents a case of misapplication of terms. It is also presented to the wrong tribunal. The question whether a tax is just and equal or not is not a question of law. And this will meet any objection to the law based upon the fact that other kinds of business are not similarly taxed. Apportionment of taxation is purely a legislative function."

We may agree with the governor who, in vetoing the bill after it first passed the legislature, said:

"It is apparent that the legislature recognizes that those merchants engaged in chain store operation enjoy certain economic advantages which are not available to those whose merchandising is done on the single store plan, as a result of which the latter are not in position to compete effectively. The primary purpose of this act is therefore not revenue, but rather to use the power to tax as a means of equalizing economic opportunity. With this purpose I am in accord. In my opinion, how-

ever, the act goes farther. It tends to stifle competition by annihilation of the competitors.

"We now have a retail sales tax in Michigan under which merchants are to be licensed to sell at retail on a basis of 3 per cent. of their sales. Coupled with that tax the fees provided in this act for the privilege of merchandising on the chain store plan are so high as to be practically confiscatory. It is likewise double taxation and of doubtful constitutionality. It would certainly result in much confusion and dissatisfaction and do more harm than good." House Journal 1933, p. 2135.

But the question of public policy is for legislative determination and not for the courts. *City of Traverse City* v. *Blair Township, supra.*

*Louis K. Liggett Co.* v. *Lee, supra,* affirms the general principles of *State Board of Tax Commissioners* v. *Jackson,* 283 U. S. 527, 532 (51 Sup. Ct. 540, 73 A. L. R. 1464). It was said:

"Gradation of the tax according to the number of units operated cannot be said to be so unreasonable as to transcend the constitutional powers of the legislature. The addition of a store to an existing chain is a privilege, and an increase of the tax on all the stores for the privilege of expanding the chain cannot be condemned as arbitrary."

Act No. 265, Pub. Acts 1933, is not subject to the infirmity in classification which vitiated the Florida act.

(8) The tax is not void because it constitutes double taxation. The tax in question is a license tax,—a tax upon the privilege of operating chain stores or mercantile establishments. It is contended it constitutes double taxation because there is already imposed under the law of Michigan a sales tax based upon the amount of business done. Act

No. 167, Pub. Acts 1933. The tax imposed by Act No. 265, Pub. Acts 1933, is upon the privilege to operate chain stores. The sales tax is a tax imposed upon consumption, a tax upon commodities sold, a tax which is usually and ordinarily paid not by the person who operates the business, but by the customer who purchases and pays for merchandise. Act No. 167, § 23, Pub. Acts 1933.

(9) It is contended we should take into consideration the effect of the operation of this act, and that it may result in putting a large number of chain stores and mercantile establishments out of business. If it does so, the members of the legislature must give an account of their stewardship to the people. The power to tax involves the power to destroy and the power to destroy may defeat and render useless the power to create. *McCulloch* v. *Maryland,* 4 Wheat. (17 U. S.) 316.

"The power to tax belongs exclusively to the legislative branch of the government. *United States* v. *New Orleans,* 98 U. S. 381, 392; *Meriwether* v. *Garrett,* 102 U. S. 472. In the words of Chief Justice Chase, condensing what had been said long before by Chief Justice Marshall, 'The judicial department cannot prescribe to the legislative department limitations upon the exercise of its acknowledged powers. The power to tax may be exercised oppressively upon persons; but the responsibility of the legislature is not to the courts, but to the people by whom its members are elected.' " *Spencer* v. *Merchant,* 125 U. S. 345, 355 (8 Sup. Ct. 921).

In *Alaska Fish Salting & By-Products Co.* v. *Smith,* 255 U. S. 44 (41 Sup. Ct. 219), it was contended a license tax was confiscatory and would result in destroying plaintiff's business. It is said:

"If Alaska deems it for its welfare to discourage the destruction of herring for manure and to pre-

serve them for food for man or for salmon, and to that end imposes a greater tax upon that part of the plaintiff's industry than upon similar use of other fish or of the offal of salmon, it hardly can be said to be contravening a Constitution that has known protective tariffs for a hundred years. *Rast v. Van Deman & Lewis Co.*, 240 U. S. 342, 357 (36 Sup. Ct. 370, L. R. A. 1917 A, 421, Ann. Cas. 1917 B, 455). Even if the tax should destroy a business it would not be made invalid or require compensation upon that ground alone. Those who enter upon a business take that risk.''

(10) Act No. 265, Pub. Acts 1933, is attacked because ''any place or places of business commonly known as gasoline filling stations or gasoline bulk plants which deal primarily in the sale or distribution of petroleum products,'' are by section 2 of the act exempted from the tax imposed by the act.

(a) Within constitutional limitations the determination of what classes of rights or property shall be assessed for taxes and what shall be exempt is a matter for legislative determination.

''The power to exempt from taxation, as well as the power to tax, is an essential attribute of sovereignty, and may be exercised in the Constitution, or in a statute, unless the Constitution expressly or by implication prohibits action by the legislature on the subject. Where not prohibited or restricted in its exercise by constitutional provisions, the legislature of a State has full power to exempt any persons or corporations or classes of property from taxation.'' 61 C. J. p. 384.

(b) A rule substantially similar has been adopted in this State. *People, ex rel. St. Mary's Falls Ship Canal Co.,* v. *Auditor General,* 7 Mich. 84; *Board of Supervisors of Chippewa County* v. *Auditor General,* 65 Mich. 408; *Auditor General* v. *MacKinnon*

*Boiler & Machine Co.,* 199 Mich. 489. In the latter case it was said:

"There being no constitutional restriction on this power of the legislature, it follows that it can exercise the power of exemption as it chooses."

(c) It is a general principle of law that the State may classify property for the purposes of taxation and statutes imposing taxes upon property are not invalid if they operate uniformly against or upon each class. If in the classification of rights, interests or property for the purposes of taxation some classes are subjected to taxes and other classes are exempt therefrom, the statute is not thereby rendered invalid.

(d) Gasoline filling stations are in Michigan subject to *ad valorem* taxes on their real estate. The owners or operators thereof pay a gasoline tax to the State and another gasoline tax to the government of the United States. They are also subject to the general sales tax imposed by the State. We need add nothing to the reasoning of the supreme court of the United States in *Louis K. Liggett Co.* v. *Lee, supra,* where it is said:

"Section 8, which defines a store, contains a proviso to the effect that the term shall not include 'filling stations engaged exclusively in the sale of gasoline or other petroleum products.' The appellants assert the exemption deprives them of equal protection, since it is arbitrary and unreasonable. It appears, however, that all dealers in gasoline, including those conducting filling stations, are required by statute to pay a license tax of $5 per annum and in addition a tax of seven cents per gallon for every gallon of gasoline or other like products of petroleum sold (Laws of Florida, Acts of 1931, chaps. 15,659 and 15,788). It has long been

settled that the fourteenth amendment does not prevent a State from imposing a tax upon different trades and professions or varying the rates of excise upon various products. *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S. 232, 237 (10 Sup. Ct. 533); *Southwestern Oil Co.* v. *Texas,* 217 U. S. 114, 121, 122 (30 Sup. Ct. 496). Clear and hostile discriminations against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, may be obnoxious, to the Constitution, but in view of the imposition of taxes on the operation of filling stations by other acts, pursuant to the legislature's power of classification, we cannot declare their exemption from the tax laid by the chain store act offensive to the guaranties of the fourteenth amendment.''

We find nothing in the exemption in question which violates either the Constitution of this State or the Constitution of the United States.

(11) It is contended Act No. 265, Pub. Acts 1933, is unconstitutional because the title does not embrace the objects of the act.*

The title of the act is as follows:

''An act to provide licenses for the establishing, opening, maintaining or operating of branch or chain stores; prescribing the license fees to be paid therefor and the disposition of the moneys derived therefrom; defining the powers and duties of the secretary of State in connection therewith, and to provide penalties for the violation of the provisions of this act.''

We are satisfied the title of the act is sufficient within the rule established by *Vernor* v. *Secretary of State,* 179 Mich. 157 (Ann. Cas. 1915 D, 128);

---

* Constitution 1908, art. 5, § 21, reads in part: ''No law shall embrace more than one object, which shall be expressed in its title.''— Reporter.

*Brooks* v. *Hydorn,* 76 Mich. 273; and *Young* v. *City of Ann Arbor,* 267 Mich. 241.

(12) Act No. 265, Pub. Acts 1933, is attacked by plaintiffs because, it is insisted, it is not an honest revenue measure, but a punitive law in disguise; its dominant purpose being to create inequality and restrain trade. The trial court found the statute had more the appearance of a punitive statute designed to control and regulate the inexorable economic law of supply and demand by legislative fiat than an honest license tax measure; that its dominant purpose was the creation of inequality in taxation and to discriminate against chain stores and mercantile establishments and drive them out of business in pursuance of the desires and demands of the operators of independent stores. We may not inquire into the motives which actuated the legislature in the exercise of its taxing power. Tax legislation enacted within the limits of the Constitution may not be invalidated because of the supposed motives which induced it. *United States* v. *Doremus,* 249 U. S. 86 (39 Sup. Ct. 214). We may not inquire into the knowledge, negligence, motives or methods of the legislature if the statute was regularly enacted in pursuance of power conferred upon the legislature by the Constitution. *Calder* v. *State of Michigan, ex rel. Attorney General,* 218 U. S. 591 (31 Sup. Ct. 122).

"Courts are not concerned with the motives which actuate the members of the legislative body in enacting a law but only in the results of their actions: Bad motives might inspire a law which appeared on its face and proves to be valid and beneficial, while a bad and invalid law might be and sometimes is passed with good intent and the best of motives."

*People* v. *Gibbs,* 186 Mich. 127, 134 (Ann. Cas. 1917 B, 830).

(13) Act No. 265, Pub. Acts 1933, is assailed by chain store employees on the ground it deprives them of their liberty to engage in gainful occupations. Reliance is placed upon *Allgeyer* v. *Louisiana,* 165 U. S. 578 (17 Sup. Ct. 427), which holds in effect that to deprive one of his liberty to contract is to deprive him of his liberty within the meaning of the constitutional prohibition. The principle, generally accepted, has its limitations. *Withey* v. *Bloem,* 163 Mich. 419 (35 L. R. A. [N. S.] 628). Present employees of chain stores have no vested right in their respective jobs. They are at liberty to leave their present employment, to get jobs elsewhere, to obtain, if they may, better wages, better hours and better working conditions. Act No. 265, Pub. Acts 1933, deprives no chain store employee of his liberty to contract, though if such stores are closed as a result of the operation of the act it may result in unemployment and hardship. The act may be subject to criticism but it is not for this reason unconstitutional.

(14) Act No. 265, Pub. Acts 1933, is said to be unconstitutional on account of the excessive penalties imposed thereby. Section 11 of the act provides:

"Any person, firm, corporation, copartnership or association who shall violate any of the provisions of this act shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than twenty-five dollars nor more than five hundred dollars or if the convicted party be a natural person, he shall be liable to be punished by imprisonment in the county jail for a period of not to exceed three months, or both such fine and imprisonment

in the discretion of the court, and each and every day that such violation shall continue shall constitute a separate and distinct offense.''

There are but few Michigan cases where this question has been considered, but in *Robison* v. *Miner & Haug*, 68 Mich. 549, 562, it is said:

''The great charter made it unlawful to impose any penalty or forfeiture which should deprive a man of what is translated his 'contentment,' or a person in any kind of business, whether commercial or otherwise, of the means of continuing that business. Selden speaks on this subject with some force in censuring the fines imposed in his time, which he says were in violation of this provision, and which led, among other things, to the bills of rights. Selden, Table Talk, 'Fine.' He says that the meaning of the great charter was to allow no man to be deprived of his ability to live according to his usual estate or 'countenance,' the great fines imposed during the times of the Stuarts, especially by the star chamber, were among the worst abuses of that period of tyranny. But very few, if any, instances can be found where men were made to forfeit their whole business receipts, and none certainly where they were made incapable of doing their ordinary business. The forfeiture of indefinite interests or sums only occurred in felonies when the penalty was death as well as forfeiture. It was in felonies, too, that disgrace and incapacity for any of the rights of citizens were imposed as penalties. These punishments have always been regarded as incompatible with our institutions, and there can be no doubt that the cruel and unusual punishments forbidden by the United States Constitution had special reference to the barbarities of the old law of felony. It is equally clear that any fine or penalty is excessive which seriously impairs the capacity of gaining a business livelihood. The penalties in this act, which

are imperative and not discretionary, must necessarily break up business, and are not measured by any standard of proportion or amount. The only measure of restraint is the value of the business broken up, and this may reach tens or hundreds of thousands of dollars.

"It is safe to say that throughout the United States any fine or forfeiture is unusual which has not some limitation of value, and any punishment is unusual which forfeits any civil rights."

Though it does not appear Act No. 265, Pub. Acts 1933, is unconstitutional within the rule above quoted, if the penal provisions of the act were held unconstitutional that would not invalidate the tax imposed thereby. Section 12 of the act provides:

"If any section, provision or clause of this act should be declared invalid, such invalidity shall not be construed to affect the portions of the act not so held invalid."

By the terms of the act the invalidity of the penal provisions of the act would not impair the taxing provisions thereof.

(15) Section 9 of Act No. 265, Pub. Acts 1933, provides:

"The provisions of this act shall be construed to apply to every person, firm, corporation, copartnership or association, either domestic or foreign, which is controlled or held with others by a majority stock ownership or ultimately controlled or directed by one management or association of ultimate management."

This is said to be invalid. A share of corporate stock represents a proportionate interest in the corporate assets subject to its liabilities. The evident purpose of section 9 of the act was to prevent at-

tempts to circumvent the act and evade the tax under the guise of corporate organization and nonresident stock ownership. The act looks beyond the corporate fiction to actual ownership and we think is not invalid.

It is urged that if the statute under consideration is held valid, the sales tax statute, Act No. 167, Pub. Acts 1933, is invalid upon the theory that if the first tax is held valid, the second is unconstitutional because constituting double taxation. One may not raise the question of double taxation who is not injured thereby. 1 Cooley on Taxation (4th Ed.), § 227. Double taxation is not permissible (*Detroit Citizens' Street R. Co.* v. *Common Council of Detroit,* 125 Mich. 673 [84 Am. St. Rep. 589]; *Stroh* v. *City of Detroit,* 131 Mich. 109), because prohibited by the constitutional rule prescribing uniformity of taxation.

"To constitute double taxation in the prohibited sense the second tax must be imposed upon the same property, for the same purpose, by the same State or government, during the same taxing period." 61 C. J. p. 137.

A tax upon the property belonging to a business and a tax upon the business is not double taxation. 1 Cooley on Taxation (4th Ed.), § 225.

Franchise taxes may be rightfully levied upon the franchise to be a corporation, and the franchise to do business as a corporation.

"One is the franchise 'to be,' the other the franchise 'to do.' One belongs to the corporators, the other to the corporation." *Union Steam Pump Sales Co.* v. *Secretary of State, supra,* 272.

The chain store tax is a franchise tax or fee imposed for the privilege of establishing, opening,

maintaining or operating two or more stores. Act No. 265, § 3, Pub. Acts 1933. The general sales tax is a privilege tax imposed upon the privilege of making retail sales, measured by the gross proceeds of such sales, less deductions allowed by statute. Act No. 167, § 2, Pub. Acts 1933.

The first is a license tax upon the right to do business in more than one store. The second is a privilege tax, measured by the amount of business done. Neither the coexistence of these tax laws nor the imposition and collection of taxes thereunder constitutes such double taxation as to render the general sales tax law unconstitutional.

The decree of the trial court is affirmed, but without costs, a public question being involved.

The above opinion was prepared prior to the decision of *Fox* v. *Standard Oil Company of New Jersey,* 294 U. S. 87 (55 Sup. Ct. 333), decided by the supreme court of the United States, January 14, 1935. We see no reason why, on account of the decision last mentioned, it should be changed.

NELSON SHARPE, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred with POTTER, C. J. NORTH, FEAD, and WIEST, JJ., concurred in the result. BUTZEL, J., did not sit.