Irma S. Constantine v. Commissioner.
Constantine v. Commissioner
Docket No. 682-66.
United States Tax Court
T.C. Memo 1969-55; 1969 Tax Ct. Memo LEXIS 246; 28 T.C.M. (CCH) 308; T.C.M. (RIA) 69055; March 17, 1969, Filed Irma S. Constantine, pro se, 738 Rivard Blvd., Grosse Pointe, Mich. Ralph F. Keister, for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined deficiencies in petitioner's Federal income tax, and additions to tax under section 6653(a), [1] for the taxable years 1958, 1960, and 1962 as follows: Year
Deficiency
Addition to Tax Sec.6653(a)
1958
$ 484.48
$ 24.22
1960
6,646.19
332.31
1962
3,077.25
153.86 Petitioner claims net operating loss deductions in connection with her business for the years 1961, 1963, 1964, and 1965 and consideration of such deductions requires a review of adjustments to the operating loss claimed for 1958. The result *248 is that all the years 1958 through 1965 are in controversy. Certain issues have been conceded by respondent; [2] the issues remaining for decision are: 309 (1) Whether petitioner correctly reported long-term capital gain realized on receipt in 1958, 1959, and 1960 of payments under installment contracts from prior sales of certain real estate; (2) Whether petitioner is entitled to deductions under section 165(c)(1) for "burglary losses" in 1958, 1959, and 1961 and, if so, in what amounts; (3) Whether petitioner is entitled to deductions under section 162(a)(1) for "wages" paid in 1960, 1961, and 1962 and, if so, in what amounts; (4) Whether petitioner is entitled to a deduction under section 162(a) for "boiler renovation costs" in 1960 or whether such costs must be capitalized under section 263(a)(1); (5) Whether petitioner is entitled to claimed deductions under section 164 for real estate and sales taxes in 1962 and, if so, in what amounts; (6) Whether petitioner is entitled under section 166(d) to a nonbusiness bad debt deduction of $7,000 in 1959 rather *249 than an ordinary loss deduction under section 165 of $21,000 in 1960; (7) Whether petitioner failed to report a part of the interest income which she received in 1959 and 1962; (8) Whether legal fees incurred in efforts to transfer a liquor license from one location to another in 1960 and 1962 constitute business expenses under section 162(a) or nondeductible capital expenditures under section 263(a); (9) Whether petitioner incurred net operating losses in 1961, 1963, 1964, and 1965 in excess of the amounts conceded by respondent for purposes of determining the availability of carryback deductions in 1958, 1960, and 1962; and (10) Whether additions to tax for negligence under section 6653(a) were correctly determined for 1958, 1960, and 1962. *250 General Findings of Fact Petitioner Irma S. Constantine was a legal resident of Grosse Pointe, Michigan, when her petition was filed. She filed Federal income tax returns for the taxable years 1958 through 1965, inclusive, with the district director of internal revenue at Detroit, Michigan. Issue 1: Capital Gains from Sale of Real Estate Findings of Fact In 1952 petitioner inherited from her mother a one-twelfth interest in certain real estate known as the "Macomb property." This real estate was sold in 1958 and petitioner elected to report the gain on the installment method of accounting. Petitioner's proportionate share of the gross sale or "total contract price" was $12,566. In calculating her gross profit ratio for purposes of computing her annual taxable gain, petitioner deducted $2,000 as her basis in the Macomb property and $1,215 as her share of the selling expenses - using figures supplied by her attorney and the administrator of her mother's estate. In 1958 and 1960 petitioner reported long-term capital gain of $1,539 and $656.50, respectively, from installment payments received from the sale of this property. Respondent determined that petitioner's basis in *251 the Macomb property was $967 and her share of the selling expenses was $1,065. Based on respondent's determinations, petitioner's "gross profit" from the sale of the Macomb property was as follows: Selling price
$12,566
Less:
Basis
$ 967
Selling Expenses 1,065 2,032
Gross Profit
$10,534 The gross profit ratio ($10,534/$12,566) was 83.8 percent. Petitioner received installment payments in 1958, 1959, and 1960 from the sale of the Macomb property in the amounts of $2,080, $6,300, and $2,525, respectively. The following schedule reflects the long-term capital gain received from such installment payments: Year
InstallmentPayment
Gross ProfitRatio
Gain
1958
$2,080
83.8
$1,743.04
1959
6,300
83.8
5,279.40
19 60
2,525
83.8
2,115.95 310 Petitioner failed to report gain from the installment payments received in 1958, 1959, and 1960 as follows: Year
Gain Reportable
Gain Reported
Gain NotReported
1958
$1,743.04
$1,539.00
$ 204.04
1959
5,279.40
0
5,279.40
1960
2,115.95
656.50
1,459.45
Based on the county land records and the records of the purchaser as to installment payments, *252 respondent also determined that petitioner received an installment payment of $2,239.30 in 1959 from the earlier sale of her one-twelfth interest in the "Semler property." From the same sources respondent calculated petitioner's gross profit ratio to be 70.79 percent and accordingly concluded that $1,585.20 long-term capital gain in respect to the Semler property was reportable in 1959. Petitioner did not report any long-term capital gain in that year from installment payments received from the sale of the Semler property. Opinion Respondent determined that the gross profit ratio applicable to petitioner's installment collections received from the sale of her one-twelfth interest in the Macomb property was 83.8 percent and recomputed the amount of gain realized in 1958, 1959, and 1960 as set forth in our findings. Petitioner argues that respondent's determinations are inaccurate, but her only evidence on this point was testimony that the gross profit ratio shown on her returns was derived from basis and selling cost figures provided by her attorney and the administrator of the estate through which she inherited her interest in the property. She offered no explanation for her failure *253 to report her receipts in 1959. The burden of proving that respondent's determinations were erroneous rested with petitioner. She did not carry that burden by testifying that she based her computations on information supplied to her by other individuals. In the absence of any substantial evidence to the contrary, respondent's determinations must be sustained. With respect to the Semler property, respondent based his determinations on county land records and the purchaser's records. [3] Petitioner offered no evidence as to her basis, selling costs, share of the total contract price of the Semler property, or amount of payments received in 1959. Accordingly, respondent's determinations of the amounts received and required to be reported in 1959 from the sale are sustained. Issue 2: Burglary Losses Findings of Fact During the taxable years in issue petitioner *254 owned and operated the Graystone Bar (hereinafter the "Bar") located in Detroit, Michigan. Petitioner claimed deductions on her income tax returns for burglary losses from the Bar in 1958, 1959, and 1961 in the amounts of $740, $135.35, and $817.25, respectively. Since petitioner maintained no inventory records for the Bar during the years in question, she and her accountant approximated the amount of each loss, basing their approximations on estimates of the amount of merchandise on hand prior to each burglary compared with the amounts remaining after the burglary. The 1958 loss consisted primarily of petitioner's stock of higher quality liquor, which was apparently not replaced due to a change in the tastes of the Bar's clientele. The 1961 loss included beer and wine. Petitioner reported all of the burglaries to the local police precinct and introduced a copy of a police report of the burglary in 1961 showing the amount of the losses as $903.35. Respondent's agent found no police reports in the local precinct for burglaries at the Bar except one filed in 1961 showing the amount of the loss as $180. Respondent disallowed the claimed deductions, except for $180 in 1961. Petitioner *255 suffered burglary losses of $700, $135.35, and $520 in 1958, 1959, and 1961, respectively. Opinion We are convinced from the testimony of petitioner and her accountant that petitioner suffered burglary losses in all three years, 1958, 1959, and 1961, which she is entitled to deduct under section 165(c)(1). [4] The 311 revenue agent located a police report of a burglary only in 1961 and this report showed a loss of $180. However, petitioner introduced a police report of another 1961 burglary which shows an estimated loss of $877.75 in liquor, beer, and wine and $25.60 in cash. Based on all the evidence presented - including the facts that petitioner's claimed losses were estimated, that her stock of expensive liquor was taken in 1958, and that the 1961 losses included beer and wine, less expensive items - we have found that the losses were $700, $135.35, and $520 in 1958, 1959, and 1961, respectively. Included in the $520 for 1961 is the $180 allowed in the notice of deficiency. Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930).
*256 Issue 3: Wages Findings of Fact Petitioner claimed deductions in the total amounts of $4,480, $4,965, and $5,460 in 1960, 1961, and 1962, respectively, for wages and salaries paid to her son, Leonard Constantine, and son-in-law, Robert Wheeler, for services rendered in connection with the operation of the Bar. From 1960 through 1962, petitioner's son-in-law tended bar part-time; during the same years her son frequently tended bar part-time in afternoons. After 1960 petitioner had no employees who tended bar other than her son and son-in-law. In 1961, due to steadily decreasing business, petitioner seldom kept the Bar open at night, and in 1962 she never kept it open at night. In the notice of deficiency, respondent disallowed $2,960 of the wage deduction for 1960 as excessive and disallowed the deductions for 1961 and 1962 in their entirety. Petitioner paid her son and her son-in-law compensation in the amounts of $1,520 (as allowed by respondent), $750, and $500 for personal services actually rendered in 1960, 1961, and 1962, respectively. Opinion Respondent disallowed deductions claimed for wages and salaries in 1960 in part and in 1961 and 1962 in full on the grounds *257 that both petitioner's son and son-in-law only worked part-time in the evening and the Bar was open only infrequently in the evening in 1961 and never in 1962. However, on the basis of the record before us, we have found that petitioner's son-in-law worked part-time in the Bar in 1960, 1961, and 1962, and that her son worked part-time in the afternoons during this period. In making our findings as to the reasonable allowances for wages paid for personal services actually rendered [5] by petitioner's son and son-in-law in these three years, we have considered the facts that the gross receipts from the business were decreasing, that the Bar was open a decreasing number of hours during the years in question, that the salary deductions claimed exceeded the gross receipts from the business, and that a part of the purported salaries were admittedly paid for services alleged to have been rendered a decade earlier. Cohan v. Commissioner, supra.
*258 Issue 4: Boiler Renovation Findings of Fact In 1960 petitioner renovated the boiler in the building in which the Bar was located. As a result the old boiler was practically remade. On her income tax return for 1960, petitioner claimed a deduction for this expenditure as a business expense in the amount of $1,327.05. Opinion Respondent disallowed this deduction and treated the outlay for the boiler as a depreciable capital expenditure. Petitioner admitted that the boiler was made over or made new - in effect, renovated. Accordingly, the expenditure was not made for mere repairs, but to rebuild the boiler, thus arresting deterioration and prolonging its useful life; consequently, section 263(a)(1) [6] prohibits a deduction under section 162(a) and respondent properly capitalized the expenditure. See sec. 1.162-4, Income Tax Regs.; Camilla Cotton Oil Co., 31 T.C. 560, 569 (1958). 312 Issue *259 5: Taxes Findings of Fact In her income tax return for 1962 petitioner claimed deductions of $7,469.24 and $300 for real estate and sales taxes, respectively. Respondent disallowed as unsubstantiated $1,275.41 of the real estate taxes and $196 of the sales taxes. To assist in preparing petitioner's income tax return, her accountant computed the 1962 sales taxes for the Bar on the basis of gross receipts for that year and the deduction claimed reflected his computation. [7] Petitioner's gross receipts, as claimed in her return for 1962, were $1,160.20. Opinion Respondent's disallowance of real estate taxes of $1,275.41 and sales taxes of $196 is based on grounds of lack of substantiation. Petitioner claimed that the disallowed real estate tax represented a special assessment, but the only evidence offered was a 1961 tax receipt. In view of petitioner's complete failure of proof *260 on this item, we must sustain respondent's disallowance of the claimed real estate tax deduction. As to the sales tax, petitioner's accountant testified that the tax was based on her gross receipts - the Michigan sales tax is a tax on the privilege of doing business measured by the amount of business done, C. F. Smith Co. v. Fitzgerald, 270 Mich. 659, 259 N.W. 352 (1935), and not imposed on the consumer, City of Wyandotte v. State Board of Tax Adm., 278 Mich. 47, 270 N.W. 211 (1936). Upon careful consideration of petitioner's gross receipts and deductions for sales taxes in 1962 as shown in her tax return, we are not convinced that petitioner paid sales taxes in 1962 in an amount greater than that allowed by respondent. Therefore, we sustain respondent's determination on this issue. Issue 6: Nonbusiness Bad Debt or Ordinary Loss Findings of Fact Petitioner and her two children made a series of loans to Harry Harwoods (hereinafter "Harwoods") beginning in 1948. In an effort to collect the loans, petitioner and her two children, in 1958, sued Harwoods and obtained a judgment against him for $21,000. The amount of the judgment obtained by petitioner *261 alone was $7,000. Harwoods was adjudicated bankrupt in 1959. Petitioner claimed a loss deduction of $21,000 in 1960. Respondent disallowed this deduction and allowed petitioner a non-business bad debt deduction of $7,000 for 1959. Opinion Since the advances were made as loans, any deduction for the worthlessness thereof is allowable only under section 166, not 165. Dominick J. Salomone, 27 T.C. 663, 668-669 (1957). Petitioner has not shown that she was in the business of loaning money or that the worthless debt had any relationship to her sole proprietorship business; accordingly, she is limited to a deduction for a nonbusiness bad debt loss. Sec. 166(d).[8] Clearly the debt became worthless no later than 1959 - the year in which the debtor was adjudicated bankrupt. Sec. 166 (d)(1)(B). As to the amount of the loss, petitioner has admitted that she personally obtained a judgment against Harwoods for only $7,000. Her unsupported testimony that the amount of the judgment in her favor was erroneous and that she actually advanced greater amounts than $7,000 is not convincing. Accordingly, respondent's determination is sustained. *262 Issue 7: Interest Income Findings of Fact Respondent determined that petitioner failed to report in her income tax return $146.69 313 of interest income received in 1959 from Header Tool Company under an installment sales contract, and $100 of interest income received in 1962 from The Michigan Bank. Petitioner's records of installment payments under the Header Tool Company contract show that two payments were received in 1959. The entry for the first payment, received on February 4, 1959, shows that it included interest in the amount of $129.39. The entry for the second payment, received on March 4, 1959, which, according to petitioner's records, covered the balance of the debt, does not show any part of it as interest. Petitioner conceded that she did not report $100 of interest income received from The Michigan Bank in 1962. Opinion Respondent's determination as to this issue is sustained, both as to The Michigan Bank and the Header Tool Company interest. Petitioner conceded that she failed to report the $100 of interest income received from The Michigan Bank in 1962. As to the interest income from Header Tool Company, the first of the two payments received in 1959 *263 admittedly included interest of $129.39. Petitioner offered no explanation of, or any evidence to support, her position that the total amount of the second payment, received one month later, was principal rather than in part interest. In these circumstances, we must conclude that she received the disputed interest income. Issue 8: Legal Fees Findings of Fact The community in which the Bar had been located for many years had deteriorated and the result was that petitioner incurred repeated losses from its operation. In 1960, and again in 1962, petitioner attempted to obtain permission from the state licensing agency to transfer her liquor license from the Bar to a building which she owned in another community in Detroit. She incurred attorney fees of $3,000 and $5,537.51 in 1960 and 1962, respectively, in attempts to transfer the license but permission to make the transfer was denied. Petitioner deducted these fees as business expenses in the years in which they were paid; respondent treated the fees as nondeductible capital expenditures. Opinion Relying upon Tube Bar, Inc., 15 T.C. 922 (1950), where we held that legal services incident to the purchase of a *264 bar and its accompanying liquor license were required to be capitalized, respondent argues that petitioner's attempts to move her liquor license to another location constituted a nondeductible capital expense. However, Tube Bar dealt with the acquisition of a new license and, consequently, we do not think its reasoning is apposite. The record here shows that petitioner's Bar was located in a neighborhood which had seriously deteriorated. She could no longer operate the Bar profitably in that location. Her accountant testified that he advised her she could "take a trip around the world" on the losses she was sustaining. She owned a building in another Detroit community to which she wanted to move the Bar, but she was required to secure the permission of the Liquor Control Commission to use the license at the new location. Exercising her judgment as to the best interests of the business, she incurred the disputed legal fees in efforts to obtain the coveted permission. "It has long been recognized that the expenses of physically moving machinery or equipment from one building or location to another as distinguished from improvements added * * * are ordinary and necessary business *265 expenses." Electric Tachometer Corp., 37 T.C. 158, 161 (1961). We think the same rule is applicable here. Had the license, a capital asset already held by petitioner, been transferred, no value would have been added to it, since it would be equally renewable and transferable at either location. See Mich. Stat. Ann., sec. 18.988 (Supp. 1968); Cobb v. Liquor Control Commission, 369 Mich. 505, 120 N.W. 2d 245 (1963) (liquor license transferable to another location with permission of local Liquor Control Commission). The basic character of the disputed expenditures is not changed by the fact that the requests to transfer the license were denied. We believe that the legal fees in question are deductible as ordinary and necessary business expenses in the years in which petitioner paid them. Issue 9: Net Operating Losses Findings of Fact In her returns for 1961, 1963, 1964, and 1965 petitioner claimed net operating losses of $12,739.24, $6,866.50, $6,192.35, and $3,981.81, respectively. In an amendment to her petition, filed on March 8, 1968, petitioner alleged that she is entitled to deduct the net operating losses in computing her liabilities for 1958, 1960, *266 or 1962. 314 In the notice of deficiency for 1958 respondent allowed petitioner a net operating carryback deduction from 1961 of $2,889.84. Respondent has conceded that petitioner incurred net operating losses in 1963 and 1964 in the amounts of $4,700.01 and $4,075.63, but has denied that she incurred a net operating loss in 1965. Opinion The only proof of the net operating losses was the entries on the income tax returns. It is well established that an entry on a tax return is not evidence that a loss has been incurred. A. Raymond Jones, 25 T.C. 1100 (1956), reversed on other grounds 259 F. 2d 300 (C.A. 5, 1958). For lack of proof, therefore, we must hold for respondent on this issue, giving effect, of course, to the notice of deficiency as to 1961 and respondent's concessions as to the amounts of the losses for 1963 and 1964. Necessary adjustments should be made, however, to the determined net operating losses for each of the years resulting from our holdings on other issues, including the depreciation allowable in subsequent years as a result of the capitalization of the boiler renovation costs incurred in 1960, wages paid to employees, burglary *267 losses, and respondent's concession of the gross receipts issue. Issue 10: Additions to Tax for Negligence Findings of Fact Petitioner did not maintain inventory records in the Bar. She also failed to keep records of the hours her son and son-in-law worked in the Bar during the years in question and this resulted in deductions for salaries claimed in excess of a reasonable amount. Similarly, due to her lack of adequate records as to her other sources of income, petitioner failed to report portions of her gains from the sale of the Macomb and Semler properties, and interest received from the Header Tool Company and The Michigan Bank. Petitioner's underpayments of income taxes in 1958, 1960, and 1962 were attributable to her negligence in keeping adequate records and in preparing her returns. Respondent determined that petitioner was liable, pursuant to section 6653(a), for additions to tax in 1958, 1960, and 1962 for negligence or intentional disregard of rules and regulations. Opinion To avoid the additions to tax under section 6653(a), [9] petitioner must show that no part of any underpayment of income taxes was due to her negligence or intentional disregard of respondent's *268 rules and regulations in making out her tax returns, Byron H. Farwell, 35 T.C. 454, 473 (1960); petitioner has failed to carry her burden of proof on this issue. Her failure to keep adequate records for the Bar and other income-producing activities led to inaccuracies in her 1958, 1960, and 1962 returns - excessive deductions for wages and burglary losses, failure to report certain gains and interest income - resulting in the underpayments. Such inaccuracies are affirmative evidence of negligence on the part of petitioner in making her returns for 1958, 1960, and 1962. See Barry Meneguzzo, 43 T.C. 825 (1965). The additions to tax under section 6653(a) are sustained *269 for 1958, 1960, and 1962. The amounts of the penalties determined should, of course, be reduced to reflect the concessions made by respondent as well as the conclusions we have reached on the substantive issues presented for decision. Decision will be entered under Rule 50. 315 Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. The concessions made by respondent at the trial or on brief were (1) that petitioner correctly reported gross receipts from her business for the years 1958 through 1962, inclusive; (2) that in 1958 she correctly reported long-term capital gain from the sale of property identified in the notice of deficiency as the Warren Township property; (3) that in 1960 she correctly reported long-term capital gain on the sale of realty identified in the notice of deficiency as Oakland County property; (4) that she correctly reported long-term capital gain in 1962 from the sale of lots 30 and 31 in the Maloney Park Subdivision; and (5) that she incurred net operating losses in 1963 and 1964 in the amounts of $4,700.01 and $4,075.63, respectively.↩
3. In his opening statement respondent conceded that petitioner inherited only a one-twelfth interest in the Semler property, but the revenue agent testified, apparently in error, that petitioner's gross profit ratio and the amount of installment payments received in 1959 were based on a one-third interest in this property.↩
4. SEC. 165. LOSSES. * * * (c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - (1) losses incurred in a trade or business;↩
5. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *↩
6. SEC. 263. CAPITAL EXPENDITURES. (a) General Rule. - No deduction shall be allowed for - (1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. * * *↩
7. Petitioner testified, mistakenly we believe, that the deduction was for state personal income taxes; the testimony of the accountant as to the computation and nature of the tax comports with the Michigan sales tax, which is a tax on the privilege of doing business, measured by gross receipts.↩
8. SEC. 166. BAD DEBTS. * * * (d) Nonbusiness Debts. - (1) General Rule. - In the case of a taxpayer other than a corporation - * * * (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. (2) Nonbusiness Debt Defined. - For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than - (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.↩
9. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes. - If any part of any underpayment (as defined in subsection (c)(1) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩